**BAGEL INN, INC., etc., Plaintiff,**

v.

**ALL STAR DAIRIES, et al., Defendants.**

**Civ. A. No. 80–2645.**

United States District Court,
D. New Jersey.

Feb. 26, 1982.

**108**

Organ & Strawinski by Paul V. Strawin-ski, Montvale, N. J., and Meredith & Cohen by Joel C. Meredith, Steven J. Greenfogel, Philadelphia, Pa., and Wolf, Popper, Ross, Wolf & Jones by Robert A. Skirnick, New York City, for plaintiff.

Wilentz, Goldman & Spitzer by Warren Wilentz, Woodbridge, N. J., and Pepper, Hamilton & Scheetz by Peter Hearn, Philadelphia, Pa., for defendant Johanna.

Saiber, Schlesinger, Satz & Goldstein by William F. Maderer, Newark, N. J., and Kaye, Scholer, Fierman, Hays & Handler by Stuart I. Friedman, Allen Kezsbom, New York City, for defendants All Star, Clinton, Cream-O-Land, Durling.

Walder, Sondak, Berkeley & Brogan by Heather G. Suarez, Newark, N. J., and Wald, Harkrader & Ross by Thomas A. Balmer, James Welch, Washington, D. C., for defendant Tuscan.

## OPINION

MEANOR, District Judge.

This action was commenced on behalf of all private persons within the State of New Jersey who purchased, directly from defendants, dairy products for resale or further processing. In the complaint, filed in this court on August 15, 1980, it is alleged that defendants combined and conspired to raise, fix, and maintain prices of dairy products in New Jersey. After months of discovery, a settlement was consummated between the parties. On October 1, 1981, $2,150,000 was placed in escrow and invested in an interest bearing instrument at an annual rate of 16¾ percent.

In accordance with *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), the members of the purported class were notified and a hearing was scheduled to evaluate the proposed settlement. The parties submitted briefs, affidavits and documentation in support of the motion to approve the settlement. No class member objected to the terms of the agreement. On December 21, 1981, I issued an oral opinion from the bench approving the settlement. I found that the agreement was eminently fair and well within the range of reasonableness in light of the best possible recovery for the class and the attendant risks in litigation.

In conjunction with the motion to approve the settlement, plaintiffs' counsel submitted a petition for attorney fees with voluminous supporting documentation. I reserved my decision on that issue in order to devote the requisite amount of time and analysis to counsel's request. The assessment of a reasonable allowance for attorney's fees is the subject of this opinion.

*The Lindy Standards.*

In assessing the amount of attorneys' fees in this class action, I am bound by the principles enunciated in the seminal decisions of the Court of Appeals for the Third Circuit in *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) (*Lindy I*) and *Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1975) (*Lindy II*). The analysis to be employed by this court is explicitly set forth in these opinions. In *Lindy I*, the Court instructed as follows:

> In detailing the standards that should guide the award of fees to attorneys successfully concluding class suits, by judgment or settlement, we must start from the purpose of the award: to compensate the attorney for the reasonable value of services benefiting the unrepresented claimant. Before the value of the attorney's services can be determined, the district court must ascertain just what were those services. To this end the first inquiry of the court should be into the hours spent by the attorneys—how many hours were spent in what manner by which attorneys.

. . . .

After determining, as above, the services performed by the attorneys, the district court must attempt to value those services.

. . . .

The value of an attorney's time generally is reflected in his normal billing rate. A logical beginning in valuing an attorney's services is to fix a reasonable hourly rate for his time—taking account of the attorney's legal reputation and status (partner, associate). Where several attorneys file a joint petition for fees, the court may find it necessary to use several different rates for the different attorneys.

*Lindy I*, 487 F.2d at 167.

The amount determined under the above analysis has been denominated the "lodestar" figure. *Lindy I* and progeny make clear that this sum is to form the basis of the court's overall fee computation. *See Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1217–18 (3d Cir. 1978). Plaintiffs' counsel bear the burden of establishing the amount of a reasonably hourly rate. It is the responsibility of this court to scrutinize the rate to ensure that it is fair and reasonable in light of the circumstances involved in the present litigation. *Id.* at 1217.

After establishing the lodestar figure, at least two other factors are to be considered in order to assess the total award. In *Lindy I*, the Court explained:

> The first of these is the contingent nature of success; this factor is of special significance where, as here, the attorney has no private agreement that guarantees payment even if no recovery is obtained. In assessing the extent to which the attorneys' compensation should be increased to reflect the unlikelihood of success, the district court should consider any information that may help to establish the probability of success.
>
> . . . .

The second additional factor the district court must consider is the extent, if any, to which the quality of an attorney's work mandates increasing or decreasing the amount to which the court has found the attorney reasonably entitled. In evaluating the quality of an attorney's work in a case, the district court should consider the complexity and novelty of the issues presented, the quality of the work that the judge has been able to observe, and the amount of the recovery obtained. This last factor may be the only means by which the quality of an attorney's performance can be judged where a suit is settled before any significant in-court proceedings. In making allowance for the quality of work, the court must keep in mind that the attorney will receive an otherwise reasonable compensation for his time under the figure arrived at from the hourly rate. Any increase or decrease in fees to adjust for the quality of work is designed to take account of an unusual degree of skill, be it unusually poor or unusually good.

*Lindy I*, 487 F.2d at 168 (footnote omitted). It is to be emphasized that the lodestar is not to be increased as a matter of course. Upon an evaluation of the specific circumstances of the case before me, I must evaluate whether, and to what extent, such an increase is justified and consistent with the sound exercise of discretion. *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d at 1217.

## LODESTAR COMPUTATION.

### A. *Services of Attorneys.*

Contained in counsels' fee petition is a listing of plaintiffs' attorneys and a break down of the hours spent in these proceedings.[1] This information is set forth below:

Meredith & Cohen, P.C.

| | |
|---|---|
| Joel Meredith | 224 hours 45 minutes |
| Steven J. Greenfogel | 897 hours 45 minutes |
| Bruce K. Cohen | 86 hours 45 minutes |
| Paralegal | 120 hours |
| Subtotal | 1329 hours 15 minutes |

1. None of the time set forth was expended in the preparation of the petition for attorneys' fees.

Wolf, Popper, Ross, Wolf & Jones (Wolf, Popper)

| Robert A. Skirnick | 372 hours 20 minutes |
|---|---|
| Harold Mayerson | 151 hours |
| Ellen Chapnick | 22 hours 05 minutes |
| Paralegal | 12 hours 55 minutes |
| Subtotal | 558 hours 20 minutes |

Organ & Strawinski

| Fredrick Organ | 1 hour 33 minutes |
|---|---|
| Paul Strawinski | 13 hours 06 minutes |
| Subtotal | 14 hours 39 minutes |
| TOTAL | 1902 hours 15 minutes |

In strict compliance with *Lindy II*, counsel for plaintiffs have submitted contemporaneously-made, handwritten time records of the work performed, which records include a brief description of the services rendered in the designated time.[2] *See Lindy II*, 540 F.2d at 109. As previously indicated, this court must first evaluate the nature of the services rendered and the hours expended concerning those services. Each individual seeking remuneration will be evaluated separately. Having reviewed the voluminous documents submitted in support of the fee petition, this court finds as follows:

1. Joel Meredith—Mr. Meredith is a partner in the firm of Meredith & Cohen, P.C. His involvement in this case commenced on July 7, 1980. The time spent by Mr. Meredith was largely devoted to coordinating the activities of plaintiffs' counsel, final review of the initial drafts of documents submitted to this court and the plotting of strategy in the instant proceedings. For the most part, the records reflect that Mr. Meredith performed these tasks in brief intervals virtually on a daily basis. Larger segments of time were expended in the preparation for and attending depositions of principal officers of defendant companies and in the negotiation and securing of the settlement of this action. The time records reflect that Mr. Meredith spent at least 224 hours and 45 minutes in conjunction with this case. His services were necessary and

were instrumental in the disposition of this action.

2. Steven J. Greenfogel—Mr. Greenfogel is a partner with Meredith & Cohen. As reflected in the hourly breakdown of services performed in this case, Mr. Greenfogel was the work horse. He was personally responsible for the drafting of the complaint, interrogatories, requests for production of documents, objections to production requests by defendants, preliminary research concerning the prospect of class certification, and research geared to the legal authority supporting access to grand jury records relevant to this action. Mr. Greenfogel was instrumental in securing the grand jury documents and in compiling microfilms of these materials. He spent a considerable amount of time in reviewing this information in preparation for depositions and the eventual settlement. A significant amount of time was devoted to the review of the extensive documentation involved in this matter. Due to his familiarity with all aspects of this case, Mr. Greenfogel's participation in the depositions, strategy meetings, and settlement conferences was necessary. Finally, Mr. Greenfogel was instrumental in the preparation of class lists and spent a significant amount of time communicating with purported class members. I find, however, that there was a slight error in the calculation of the hours claimed in the fee petition. Rather than the 897 hours and 45 minutes claimed in the petition, the time records reveal that the total hours expended by Mr. Greenfogel amount to 870 hours and 30 minutes.

3. Bruce K. Cohen—Mr. Cohen is also a partner in Meredith & Cohen. Mr. Cohen's involvement in this case was less extensive than that of his colleagues. For the most part, Mr. Cohen's services consisted of the review and analysis of deposition testimony, interrogatories, and documents secured from defendants. A portion of his time was devoted to the research and drafting of

2. Organ & Strawinski, plaintiffs' local counsel, have submitted reconstructed time records. Due to the nature of the services performed by these attorneys, these records can be corroborated by reference to the contemporaneously-

made time records submitted by Meredith & Cohen and Wolf, Popper. I therefore find that Organ & Strawinski's reconstructed records are "reasonably accurate." *Lindy II*, 540 F.2d at 109.

a motion to compel production of documents and, to a lesser extent, the preparation of papers in opposition to defendants' anticipated motion to compel production.[3] The time sheets indicate that the claimed time expenditure of 86 hours 45 minutes is accurate. It is to be noted that Mr. Cohen spent a considerable amount of time preparing the fee petition which was not included in the time for which compensation is sought herein. *See* note 1 *supra.*

4. Robert A. Skirnick—Mr. Skirnick is a partner in the Wolf, Popper, Ross, Wolf & Jones firm. Mr. Skirnick acted in a capacity similar to that of Mr. Meredith. Although the time sheets reflect a large number of entries of a short time interval in which Mr. Skirnick and Mr. Meredith coordinated the activities of plaintiffs' counsel, it cannot be said that their activities overlapped or that the tasks performed were duplicative. Mr. Skirnick was involved in the final review and revision of an extensive set of interrogatories, requests for production of documents and papers in support of a motion to compel. Mr. Skirnick spent a substantial amount of time preparing for and taking the depositions of defendants' officers. He was in constant contact with Mr. Meredith and Mr. Greenfogel concerning litigation strategy, pretrial procedure, settlement developments and the review and evaluation of relevant documents. He was involved in negotiations with defendants concerning discovery stipulations which facilitated the instant proceedings. A significant amount of time, of course, was devoted to the settlement which ultimately resolved this controversy. Furthermore, Mr. Skirnick devoted a substantial amount of time to the preparation of the brief in support of the settlement submitted to this court. Finally, Mr. Skirnick has been actively involved in the notification of the class members and responding to their inquiries. The time sheets submitted clearly indicate that Mr. Skirnick spent at least 372 hours 20 minutes representing plaintiffs in this matter.

5. Harold A. Mayerson—Mr. Mayerson is a partner of Wolf, Popper. The majority of time spent by Mr. Mayerson was devoted to analysis of the numerous documents concerning this case. Largely, this consisted of a review of digests of the extensive documentation compiled by the grand jury. Mr. Mayerson also participated in the depositions of defendants' officers on a few occasions. The time records support his claim that he expended 151 hours in this case.

6. Ms. Chapnick—Ms. Chapnick is an associate with Wolf, Popper. Her participation in this case was limited to the scanning and digesting of data recorded on microfilm which was subsequently utilized in compiling damage computations included in the brief in support of the motion to approve the settlement. The 22 hours and 5 minutes claimed are accurately recorded in the handwritten time sheets.

7. Paul V. Strawinski and Fredrick Organ—These individuals are partners in the firm Organ & Strawinski. Mr. Strawinski and Mr. Organ were local counsel in this matter. All of the time logged by these attorneys concerned communication with plaintiffs' counsel located outside the state and with this court. The services rendered were required in order to adequately perform the role of local counsel and were consistent with the responsibilities attendant to this function. Mr. Strawinski's asserted time expenditure of 13 hours 6 minutes and Mr. Organ's time of 1 hour 33 minutes are supported by the records submitted and corroborated by the time sheets proffered by other counsel for plaintiffs.

8. Paralegals—The paralegals employed by Meredith & Cohen and Wolf, Popper were involved in document production, digesting of documents and microfilm and the compilation of statistical and financial data. I find that the 120 hours expended by the Meredith & Cohen paralegals and the 12 hours 55 minutes by paralegals at Wolf, Popper are fully documented in the time records.

In sum, I find that counsel for plaintiffs' provided effective, well coordinated and ef-

**3.** Defendants' motion to compel discovery was

pending at the time of settlement.

ficient legal services in this proceeding. The various tasks undertaken in this rather complex antitrust class action were parceled out to ensure the expeditious prosecution of the suit. A reasonable degree of supervision by more experienced counsel served to enhance the efficacy of the representation. I find that the services performed were neither duplicative nor unnecessary and that the total number of hours spent was, and is, reasonable.

### B. Valuation of Services.

#### 1. Hourly Rate Requested.

As stated previously, "[t]he value of an attorney's time is generally reflected in his normal billing rates." Lindy I, 487 F.2d at 167. The hourly rates normally charged by counsel herein are set forth below:

| Meredith & Cohen | Rates/Hour |
| --- | --- |
| Joel Meredith | $140 |
| Bruce K. Cohen | $115 |
| Steven J. Greenfogel | $ 95 |
| Paralegal | $ 30 |
| **Wolf, Popper** | |
| Robert A. Skirnick | $175 |
| Harold Mayerson | $150 |
| Ellen Chapnick | $ 90 |
| Paralegal | $ 35 |
| **Organ & Strawinski** | |
| Fredrick Organ | $ 85 |
| Paul Strawinski | $ 85 |

#### 2. Reasonable Hourly Rates in Light of Quality of Legal Services Rendered and Experience of Counsel.

Counsel have submitted detailed information regarding the educational background of each attorney, the degree of experience in complex antitrust and securities class actions, publications concerning this type of litigation and lecturing activities relating to this field. See Appendix B annexed to Joint Application and Memorandum of Plaintiff's Counsel for the Award of Fees and Reimbursements. I will refrain from listing the credentials of each attorney. Having considered the information contained in Appendix B, I find that the differences in the hourly rates requested appropriately reflect the level of experience of the respective attorneys and his/her status in the firm.

Furthermore, I find that the hourly rates set forth above are justified in light of the reputation and experience of counsel and the quality of legal representation in this court. Plaintiffs were confronted with significant substantive and procedural obstacles in the maintenance of this suit. Pretrial difficulties were substantially ameliorated by the well coordinated activities of the various law firms and by their successful efforts to secure consensual resolution of most pretrial disputes. Although faced with the prospect of protracted and expensive litigation involving substantial difficulties in establishing liability and proof of damages, plaintiff's counsel were able to secure an eminently fair settlement in a relatively short period of time. The settlement fund of over 2 million dollars was secured quickly and has been earning interest from October of 1981. That the settlement negotiated was reasonable and the fee petition fair is evidenced by absence of objections on the part of class members.[4] I do not know whether less able counsel could have obtained this favorable result. I am certain, however, that the quality of legal services rendered in this case was of a high caliber.

Based on the foregoing, I find that plaintiffs' counsel have satisfied their burden of establishing that the proposed hourly rates are fair and reasonable.[5] I find that the

---

4. At the hearing in which the settlement of this controversy was approved, plaintiffs' counsel informed this court that one member of the plaintiff class, Mayfair Super Markets, Inc., had raised an objection concerning the portion of the fee petition seeking reimbursement of out-of-pocket expenses. See page 116 infra. Mayfair failed to appear at the hearing, however, and I indicated that I would consider the objection withdrawn if I did not receive additional information concerning the nature of its objection within a week. Subsequent to the hearing I did not hear from this member of the plaintiff class. Even if this objection were properly before me, I would consider it unfounded.

5. In arriving at this conclusion, I have considered the affidavit submitted by Mr. Arthur

substantially lower rates charged by Organ & Strawinski are appropriate in light of their responsibility as local counsel, and that the fee charged for paralegal tasks is reasonable. Set forth below is my assessment of the appropriate lodestar:

| Firm | Hours | Rates/Hr. | Lodestar |
|------|-------|-----------|----------|
| **Meredith & Cohen** | | | |
| Joel C. Meredith | 224 hrs. 45 mins. | $140 | $ 31,465.00 |
| Bruce K. Cohen | 86 hrs. 45 mins. | $115 | $ 9,976.25 |
| Steven J. Greenfogel | 870 hrs. 30 mins. | $ 95 | $ 82,697.50 |
| Paralegal | 120 hrs. 0 mins. | $ 30 | $ 3,600.00 |
| Subtotal | 1302 hrs. 0 mins. | | $127,738.75 |
| | | | |
| **Wolf, Popper** | | | |
| Robert A. Skirnick | 372 hrs. 20 mins. | $175 | $ 65,158.33 |
| Harold A. Mayerson | 151 hrs. 0 mins. | $150 | $ 22,650.00 |
| Ellen Chapnick | 22 hrs. 5 mins. | $ 90 | $ 1,987.50 |
| Paralegal | 12 hrs. 55 mins. | $ 35 | $ 452.08 |
| Subtotal | 558 hrs. 20 mins. | | $ 90,247.91 |
| | | | |
| **Organ & Strawinski** | | | |
| Frederick Organ | 1 hr. 33 mins. | $ 85 | $ 131.75 |
| Paul V. Strawinski | 13 hrs. 6 mins. | $ 85 | $ 1,113.50 |
| Subtotal | 14 hrs. 39 mins. | | $ 1,245.25 |
| TOTAL LODESTAR | | | $219,231.91 |

## ADJUSTMENTS TO LODESTAR

As stated previously, once the lodestar figure is determined at least two other factors should be considered in order to assess the total award. These factors are the contingent nature of success and the quality of the attorneys' services. Plaintiffs' counsel have appropriately refrained from seeking an increase in the lodestar figure attributable to the services rendered by the paralegals. With respect to the lodestar figure assessed in regard to the services of Organ & Strawinski, however, a substantial increase is requested. I view the factors to be considered in increasing the lodestar figure to be wholly inapplicable to the circumstances involved in Organ & Strawinski's participation in this suit. I therefore decline to increase the lodestar figure concerning their services. This firm had entered into a contract which guaranteed that they would receive a fee totalling 10% of the fee paid to Meredith & Cohen. Thus, any increase in the lodestar amount attributable to Meredith & Cohen would benefit Organ & Strawinski derivatively. Furthermore, the quality of the services performed by Organ & Strawinski is reflected in the hourly rate assessed to that firm. The quality of services rendered will increase the lodestar amount only when the attorneys have demonstrated an unusual degree of skill which has conferred a special benefit upon the plaintiff class. Organ & Strawinski's posture in this litigation renders an increase in the lodestar for quality of services rendered inappropriate.

With regard to the services performed by Wolf, Popper and Meredith & Cohen, I will evaluate the contingent nature of success and the quality of representation separately in accordance with the mandate of *Lindy II.* See 540 F.2d at 117–18.

### A. *Contingent Nature of Success*

In evaluating this criteria I will follow the explicit directive of the Third Circuit

---

Sills, Esquire. In his forty years of legal experience, Mr. Sills has been extensively involved in complex litigation. It is Mr. Sills' learned opinion that the hourly rates contained in the fee petition are fair and reasonable.

contained in *Lindy II.* The following quote is taken from that opinion:

> Under the rubric of the "contingent nature of success" the district court should appraise the professional burden undertaken—that is, the probability or likelihood of success, viewed at the time of filing suit. The court may increase the amount established in the computation of the "lodestar" as a reasonable fee on the basis of a careful evaluation of the following factors:
>
> 1. Analysis of plaintiff's burden. Subsumed in this category are the following considerations: (a) the complexity of the case,—legally and factually; (b) the probability of defendant's liability,—whether it is clear or dubious; whether it has been previously suggested by other civil or criminal proceedings; whether it is asserted under existing case law or statutory interpretation, or is advanced as a novel theory; (c) an evaluation of damages,—whether the claims would be difficult or easy to prove.
>
> 2. Risks assumed in developing the case. This category subsumes consideration of: (a) the number of hours of labor risked without guarantee of remuneration; (b) the amount of out-of-pocket expenses advanced for processing motions, taking depositions, etc.; (c) the development of prior expertise in the particular type of litigation; recognizing that counsel sometimes develop, without compensation, special legal skills which may assist the court in efficient conduct of the litigation, or which may aid the court in articulating legal precepts and implementing sound public policy.
>
> 3. The delay in receipt of payment for services rendered.

*Lindy II,* 540 F.2d at 117.

### 1. *Analysis of Plaintiffs' Burden*

In an oral opinion approving the settlement of this controversy issued on December 21, 1981 I discussed in some detail the complexity of this case and the difficulties confronting plaintiffs in establishing their claims. At that time I expressed the opinion that plaintiffs would have had great difficulty establishing the existence of a conspiracy to fix prices. There are several hundred thousand pages of documents already compiled. A substantial amount of expert testimony and additional depositions would be necessary in order for plaintiffs to begin proving their case. I have no doubt that if this proceeding were to proceed to trial and through the various stages of appellate review, the litigation would be both protracted and expensive.

In my opinion the risks involved in establishing liability and damages in this case at the time of filing the complaint were substantial. It is to be noted that this is not a "follow-on" private antitrust suit based on a federal indictment for antitrust violations. If the defendant in a criminal antitrust action is convicted after a plea of not guilty, that conviction is prima facie evidence of violation of the antitrust laws in a subsequent civil proceeding. In such a case, of course, the contingency factor could have little, if any, significance. Here, however, a criminal action was commenced in state court under the state antitrust laws. Under the plea bargain negotiated in that case, it was agreed that the terms of the agreement would have no evidentiary value. Plaintiffs therefore shouldered the burden of independently establishing both liability and damages in this case.

This burden was substantial. The milk industry is subject to extensive state and federal regulation which create, in effect, a base pricing system. Consequently, the conspiracy to fix prices would be difficult to prove. The limited range of flexibility in pricing is a formidable obstacle insofar as the parity in prices may be weak circumstantial evidence of a conspiracy.

The complexity of this case was compounded by the difficulties inherent in establishing damages. In a heavily regulated industry such as the dairy industry involved here, true competition simply does not exist. Proof of damages would require evidence of prices that would have prevailed absent the purported conspiracy. To be sure, the marshaling of such proof would be difficult, time consuming and expensive.

Finally, a number of problems surfaced concerning class certification. The purported class included small retail outfits, large restaurants, convenience stores and major supermarket chains. The parties therefore considered the question as to whether the named plaintiff, a small purveyor of dairy products, was "typical" of the class members to be a contested issue. Furthermore, insofar as the proposed class involves factual diversity in geographic and product markets, customers, credit arrangements and purchasing arrangements, antitrust liability and the fact of damage may have presented individual rather than common questions and thus not subject to class treatment under Fed.R.Civ.P. 23(b)(3).

### 2. Risks Assumed in Developing the Case

The risks involved for counsel were very significant. Prior to the settlement of this action counsel had initiated a vast discovery program. Over 300,000 documents were demanded and produced. Roughly 2,000 hours were expended without a guarantee of remuneration. Out-of-pocket expenses totalled $23,868.08. It is clear that the experience of counsel in previous litigation of this type greatly reduced the number of hours expended in pretrial proceedings that would have been expended by counsel less familiar with complex antitrust class actions. Plaintiffs' counsel were willing to spend a great deal of time and money on a contingent fee basis in a case where the likelihood of succeeding on the merits was very uncertain. Counsel's willingness to undertake this risky venture is, in my opinion, entitled to considerable weight in computing the adjustment to the lodestar.

### 3. The Delay in Receipt of Payment for Services Rendered

Plaintiffs' counsel began investigating this matter approximately one and one-half years ago. They have received no remuneration during this time period. Clearly, they have suffered the loss of investment income and have been adversely affected by the impact of inflation. Nevertheless, this matter was settled in a rather short period of time. Consequently, this factor will be accorded less weight than the aforementioned considerations in my evaluation of the adjustments to the lodestar amount.

### B. Quality of Professional Performance

I begin my evaluation of this aspect of the fee petition by emphasizing that the quality of the attorneys' services are for the most part reflected in the lodestar figure. Experienced counsel demand and are entitled to higher hourly fees. My evaluation of the services performed in these proceedings led to my previous conclusion that the fees claimed in the petition were reasonable. *Lindy I*, however, permits an increase in the lodestar amount under certain circumstances. As stated in that decision, "[a]ny increase or decrease in fees to adjust for the quality or work is designed to take account of an unusual degree of skill, be it unusually poor or unusually good." 487 F.2d at 168. My evaluation in this prong of the *Lindy* formulation is therefore restricted to whether the attorneys in this case demonstrated a degree of professional skill above or below that expected for lawyers of the caliber commanding the hourly rates I have assessed in the lodestar computation.

The settlement obtained on behalf of plaintiff class was a noteworthy achievement. In light of the contingent nature of success in this litigation the total settlement of $2,150,000, representing approximately 8% of the maximum possible recovery before trebling, was eminently reasonable and a tribute to the expertise of plaintiffs' counsel. Furthermore, the settlement funds were immediately secured and placed in an escrow account on October 1, 1981 and, at maturity, will yield interest of approximately $165,000. I view as particularly commendable the fact that this settlement was obtained despite the fact that the dairy industry is in a relatively poor financial condition.

In my opinion, the most significant factor warranting an adjustment to the lodestar figure is the fact that counsel for plaintiffs were able to negotiate the settlement of

this case in such a short period of time. Even in my experience with counsel of comparable skill and experience I have rarely seen a complex matter involving difficult questions of liability and damages such as this handled so expeditiously. I have little doubt that this case harbored the potential to become another in the long string of protracted, indeed interminable, proceedings that have given new meaning to the concept of complex litigation. Although there was extensive discovery involved in this matter, few disputes arose. Most pretrial controversies were resolved by stipulation. It is fair to say that absent counsel's expertise as exhibited in this proceeding, many more hours would have been expended and significantly greater expenses would have been incurred in prosecuting this case without increasing the chances for a more favorable recovery.

Based on the foregoing, I find that plaintiffs' counsel have met their burden of establishing entitlement to an increase in the lodestar computation. Plaintiffs' counsel seek an adjustment in the form of a 2.1 multiple to the lodestar figure. In light of my previous evaluation of the contingent nature of success in this matter, the substantial risks incurred by counsel in the maintenance of this action and counsel's expertise in the expeditious prosecution of this suit, I find that the 2.1 multiple is reasonable and clearly warranted. I have set forth the final award in a table annexed to this opinion. The total award of $454,559.95 represents slightly more than 20% of the settlement fund together with accrued interest.

Furthermore, counsel seek reimbursement for the out-of-pocket expenses incurred in the course of this proceeding. I have reviewed these expenses and I find them to be reasonable. Counsel will therefore be awarded the amount of $23,868.08 to compensate for out-of-pocket expenditures. A break down of the expenses incurred by Meredith & Cohen and Wolf, Popper is included on the table attached to this opinion.

The court will prepare its own order.

| Attorney/Paralegal | Time | Rates/Hr. | Lodestar | Multiple | Fee Granted |
|---|---|---|---|---|---|
| Joel C. Meredith | 224 hrs. 45 mins. | $140 | $ 31,465.00 | 2.1 | $ 66,076.50 |
| Bruce K. Cohen | 86 hrs. 45 mins. | $115 | $ 9,976.25 | 2.1 | $ 20,950.13 |
| Steven J. Greenfogel | 870 hrs. 30 mins. | $ 95 | $ 82,697.50 | 2.1 | $173,664.75 |
| Paralegal | 120 hrs. 0 mins. | $ 30 | $ 3,600.00 | --- | $ 3,600.00 |
| Meredith & Cohen | 1302 hrs. 0 mins. | | $127,738.75 | | $264,291.38 |
| | | | | | |
| Robert A. Skirnick | 372 hrs. 20 mins. | $175 | $ 65,158.33 | 2.1 | $136,832.49 |
| Harold A. Mayerson | 151 hrs. 0 mins. | $150 | $ 22,650.00 | 2.1 | $ 47,565.00 |
| Ellen Chapnick | 22 hrs. 5 mins. | $ 90 | $ 1,987.50 | 2.1 | $ 4,173.75 |
| Paralegal | 12 hrs. 55 mins. | $ 35 | $ 452.08 | --- | $ 452.08 |
| Wolf, Popper | 558 hrs. 20 mins. | | $ 90,247.91 | | $189,023.32 |
| | | | | | |
| Fredrick Organ | 1 hr. 33 mins. | $ 85 | $ 131.75 | --- | $ 131.75 |
| Paul V. Strawinski | 13 hrs. 06 mins. | $ 85 | $ 1,113.50 | --- | $ 1,113.50 |
| Organ & Strawinski | 14 hrs. 39 mins. | | $ 1,245.25 | | $ 1,245.25 |
| | | | | | |
| TOTAL | 1874 hrs. 59 mins. | | $219,231.91 | | $454,559.95 |

Expenses Incurred—Reimbursements

| Wolf, Popper | | | Meredith & Cohen | | |
|---|---|---|---|---|---|
| Photocopying | $ | 837.10 | Photocopying | $ | 776.10 |
| Long Distance Telephone | $ | 552.78 | Long Distance Telephone | $ | 854.26 |
| Travel, Food & Lodging | $ | 1315.69 | Travel, Food & Lodging | $ | 2485.30 |
| Postage—other than normal delivery | $ | 54.15 | Postage—other than normal delivery | $ | 117.46 |
| Messenger service | $ | 24.75 | Filing & Service | $ | 234.70 |
| Filing & Service | $ | 174.70 | Transcripts | $ | 835.30 |
| Transcripts | $ | 3260.30 | Overtime | $ | 123.75 |
| Overtime | $ | 208.87 | Microfilm Reader | $ | 401.00 |
| Microfilming & Doc. Copying | $ | 6805.87 | Computer Research Time | $ | 6.00 |
| TOTAL | | $13,234.21 | Economist Consultation Fees | $ | 4800.00 |
| | | | TOTAL | | $10,633.87 |