Napoleon CHISHOLM, et al., Plaintiffs,

v.

The UNITED STATES POSTAL SERVICE, et al., Defendants.

No. C-C-73-148-M.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Aug. 17, 1983.

Plaintiffs' Supplemental Motion Concerning Fees Sept. 28, 1982.

Jonathan P. Wallas, Chambers, Stein, Ferguson, Watt, Wallas, Adkins & Fuller, P.A., Louis L. Lesesne, Jr., Gillespie & Lesesne, Charlotte, N.C., Conrad O. Pearson, Durham, N.C., Bill Lann Lee, New York City, for plaintiffs.

Nancy Hutt and Charles F. Kappler, U.S. Postal Service, Washington, D.C., for defendants.

## SECOND INTERIM AWARD OF ATTORNEYS' FEES

McMILLAN, District Judge.

This suit was started more than ten years ago, on June 27, 1973. Plaintiff Chisholm, on behalf of himself and other black employees, sought relief from defendants' patterns and practices of discrimination against employees of the defendants' Charlotte Region because of their race. (Chisholm had filed a formal administrative complaint in March of 1972 and had made his way through administrative channels and had become entitled to bring this suit under the Civil Rights Act of 1964.) Other plaintiffs intervened. A class was conditionally certified. Defendants appealed, but the appeal was later dismissed for lack of prosecution. The case ultimately reached trial in August of 1979.

Following a lengthy trial, the court made findings that the defendants' employment practices were racially discriminatory and requested the parties to attempt to settle the case. Settlement efforts failing, the court issued a memorandum of decision on June 23, 1980, and directed plaintiffs to submit proposed findings of fact and conclusions of law.

Detailed findings and conclusions of law and a judgment were entered on October 3, 1980. 516 F.Supp. 810 (D.C.).

On October 3, 1980, the court also entered an order allowing interim fees in the amount of $235,000.00. Although paragraph 19 of the *judgment* permits a semantic quibble over the scope of the fee order, it is totally clear from the *order* itself that the award was partial only, that it was not a final order, and that the amount awarded was "substantially *within* the total which plaintiffs' counsel are obviously entitled to for services of the attorneys and their staff . . ." (emphasis added).

Defendants appealed the fee order and obtained a stay of that order from the Circuit Court. That maneuver rewarded defendants with another fifteen months of delay, until January of 1982, when the file finally wended its way back to this court.

The interim award of fees was paid in fact on or about the 8th day of January, 1982, many years after large parts of the services were rendered, and fifteen months after the entry of the order of October 3, 1980.

"PLAINTIFFS' SUPPLEMENTAL MOTION CONCERNING FEES," document number 241, was filed September 28, 1982; a copy is attached hereto. It summarizes the time, the labor and the expenses devoted to the case through April 30, 1982, indicating in detail the name of the lawyer, the amount of labor expended, the hourly rate customarily charged by that lawyer at the time the bill was rendered, and the time similarly spent by paralegals and law clerks. It also claims out-of-pocket expenses in the amount of $57,605.86.

A hearing has been conducted on plaintiffs' motion.

The petition for fees has been considered in light of the voluminous record in the case, and under the twelve guidelines originally set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir.), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978), and further refined by the Fourth Circuit in *Anderson v. Morris*, 658 F.2d 246 (1981). *See also Hensley v. Eckerhart*, —— U.S. ——, —— n. 9, 103 S.Ct. 1933, 1940 n. 9, 76 L.Ed.2d 40 (1983) (approving the use by district courts of the *Georgia Highway Express* guidelines). Under the guidelines of those cases, the court is expected to compute a base fee ("lodestar amount") by multiplying the number of hours reasonably expended on the case by the customary hourly rate of compensation (*Georgia Highway Express* guidelines 1 and 5). This amount is then to be adjusted upwards or downwards on the basis of the other ten *Georgia Highway Express* considerations. Taking the various factors in that order, I have reached the following findings and conclusions:

1. *Time and labor expended.*—Affidavits of plaintiffs' counsel demonstrate that plaintiffs' lawyers, paralegals and law clerks have spent on the case a monumental

amount of time and energy over a period of more than ten years, "and the end is not yet." Defendants have taken no exception to the affidavits of plaintiffs' counsel and those affidavits are accepted as correct for the purposes of this order.

The services rendered in the case as of April 30, 1982, were as follows:

(a) 3,280.15 hours of "contingent" attorney time, covering all work done by plaintiffs' counsel through December, 1981 (i.e., until a few weeks before late February, 1982, when the time expired for defendants to seek review in the United States Supreme Court of the Court of Appeals' opinion).

(b) 301.95 hours of "non-contingent" attorney time, covering all work done from January, 1982, through April 30, 1982, the cut-off date used in preparing the fee affidavits.

(c) 1,605.75 hours of paralegal and law clerk time.

5. *The hourly basis for compensation.* —The basic hourly rates at which plaintiffs' counsel seek fees are quite reasonable when consideration is given to the great competence, reputation and effectiveness of Messrs. Chambers, Wallas, Daly, Lesesne and their colleagues. The basic rates claimed, $110.00 for Mr. Chambers and $90.00 for the other attorneys who worked on the case, are in line with similar charges in this region and are nowhere near the rate which the defendants pay for outside counsel in Washington, D.C. It is of not so incidental interest that the defendants during the period of this litigation have paid labor relations lawyers in Washington, out of the public's money, at rates ranging from 150% to 190% of the rates being asked by plaintiffs' counsel for their successful services in this case.

■ Plaintiffs' counsel request that their current hourly billing rates be used in the process of setting fees for all work performed over the ten years they have worked on this case. They say that the use of current rates is the simplest and the customary way to compensate for the effects of inflation and delay. *See Graves v.*

*Barnes,* 700 F.2d 220 (5th Cir.1983); *Chrapliwy v. Uniroyal, Inc.,* 509 F.Supp. 442, 457–58 (N.D.Ind.1981), *aff'd in pertinent part,* 670 F.2d 760 (7th Cir.1982); *In re Ampicillin Antitrust Litigation,* 81 F.R.D. 395, 402 (D.D.C.1978); *City of New York v. Darling-Delaware,* 440 F.Supp. 1132, 1134 (S.D.N.Y.1977).

I agree. Counsel for plaintiffs labored in this thorny vineyard for more than eight years (from before the filing date of June 27, 1973, until January, 1982) before receiving any fees or expenses. Money paid today for services rendered a number of years ago, even at current rates, is worth less than would have been the value of contemporary payments at then current rates.

■ Defendants argue that, because the court made an interim fee award in 1980 after considering affidavits based on 1980 rates, the court is now barred from applying current rates to any of the hours expended by plaintiffs' counsel prior to the interim award. As noted above, however, that interim award was in no sense final. It was intended to provide limited, immediate, partial compensation to plaintiffs' counsel for their substantial services. Although then current rates provided a benchmark for determining an appropriate interim award, that award and the way in which it was calculated placed no limits on the total fees to which plaintiffs' counsel would ultimately be entitled. Although it was on the 3rd day of October, 1980, that the court ordered defendants to pay interim fees and expenses in the amount of $235,000.00, it was not until January, 1982, that defendants actually made the payment ordered.

Defendants also say that delay in receiving fees is an expected aspect of litigation. Apparently they believe that plaintiffs' counsel should not be compensated at all for the erosion of the real value of their fee award by inflation or for the lost use of the money. They have cited *no* authority in support of their harsh theory and the court will not follow it.

In making fee awards, other courts have used other methods to offset the ravages of

inflation and the loss of use of funds. *See, e.g., Morrow v. Finch,* 642 F.2d 823 (5th Cir.1981) (interest added to historical rates); *Copeland v. Marshall,* 641 F.2d 880, 893 (D.C.Cir.1980) (*en banc*) (percentage adjustment in the lodestar amount to take into account the delay in payment and inflation).

I conclude, based upon the uncontradicted affidavits, upon the then "going rate" for successful services of the quality and results furnished here, and upon consideration of the total time and expenses and the customary fees for like work in this area, that the appropriate "lodestar" amount which plaintiffs' counsel are entitled to recover is:

(a) For 3,280.15 hours of contingent attorneys' time: .................. $300,543.50

From 1980 Affidavits

| Name | Hours | Current 1982 Hourly Rate | Lodestar Award |
|---|---|---|---|
| Chambers | 247.00 | $110/hr. | $ 27,170.00 |
| Daly | 4.40 | 90/hr. | 396.00 |
| Lesesne | 306.25 | 90/hr. | 27,562.50 |
| Wallas | 1,487.25 | 90/hr. | 133,852.50 |
| Goldstein | 27.50 | 90/hr. | 2,475.00 |
| Lee | 624.30 | 90/hr. | 56,187.00 |
| Wright | 31.30 | 90/hr. | 2,817.00 |

From 1982 Affidavits (Sept. 1980 to Dec. 1981)

| Name | Hours | Current 1982 Hourly Rate | Lodestar Award |
|---|---|---|---|
| Chambers | 19.50 | $110/hr. | $ 2,145.00 |
| Lesesne (with Chambers firm) | 18.40 | 90/hr. | 1,656.00 |
| Lesesne (after leaving Chambers firm) | 19.75 | 90/hr. | 1,777.50 |
| Wallas | 246.50 | 90/hr. | 22,185.00 |
| Lee | 145.40 | 90/hr. | 13,086.00 |
| Lief | 93.10 | 90/hr. | 8,379.00 |
| Sherwood | 9.50 | 90/hr. | 855.00 |
| Totals: | 3,280.15 | | $300,543.50 |

(b) For 301.95 hours of non-contingent attorneys' time: ................... $ 27,260.50

From 1982 Affidavits (January 1982 through April 1982)

| Name | Hours | Current 1982 Hourly Rate | Lodestar Award |
|---|---|---|---|
| Adkins | 11.75 | $ 90/hr. | $ 1,057.50 |
| Chambers | 4.25 | 110/hr. | 467.50 |
| Lesesne | 37.75 | 90/hr. | 3,397.50 |
| Wallas | 246.50 | 90/hr. | 22,185.00 |
| Lief | 1.20 | 90/hr. | 108.00 |
| Lee | .50 | 90/hr. | 45.00 |
| Totals: | 301.95 | | $ 27,260.50 |

(c) For 1,605.75 hours of work done by paralegals and law clerks: ........ 32,245.00

Total "lodestar" fees: $360,049.00

(d) For out-of-pocket expenses: .... 57,605.86

Total: .............. $417,654.86

The "lodestar" award is therefore $360,049.00 for legal work and $57,605.86 for expenses through April 30, 1982.

Plaintiffs' counsel ask the court to award them the face amount of their non-contingent attorney time, the face amount of paralegal and law clerk time, and the face amount of their out-of-pocket expenses. They also request that their "contingency time" be doubled based upon the results obtained and upon the substantial risk which they have at all times in fact faced up until the expiration of the time for filing a final petition for review in the Supreme Court.

In accordance with the cases cited above, the court is now required to consider whether the charges for labor of the practicing attorneys (the "contingent" and the "non-contingent" attorneys' time set out above) should be adjusted upward or downward in light of the ten other factors required by *Georgia Highway Express* to be considered.

█ The court finds that the award based on the labor of attorneys should be adjusted substantially upward due to the combined effects of the following factors:

2. *The novelty and difficulty of the questions raised.*—It takes only a look at the brief of the defendants-appellants before the Circuit Court of Appeals to be reminded that the case presented difficult questions of both fact and law. For example, defendants asserted that under Title VII acts of the defendants which set the stage for the pattern of discrimination found by the court should not have been considered by the court. They contended, against strong evidence, that there was not evidence which as a matter of law would support a finding of classwide discrimination. They attacked the certification of the class and the choice of the class representatives in numerous ways. They took the view that the four years allowed by the court's order to bring defendants in compli-

ance with the order were not enough time to correct discrimination which dated back many decades (but has been under attack in this suit for more than seven years). They attacked the award of relief under the Fifth Amendment because defendants asserted Title VII was the exclusive remedy. They then attacked relief under Title VII because certain sections of Title VII were alleged to be inapplicable. Although, as the Circuit Court of Appeals concluded, there is no merit to these contentions, he would be a bold litigant indeed who would assert, as defendants did in the argument of the fee question, that as a practical matter the war was over once the District Court had filed its findings, conclusions and judgment. Nobody could get such a notion from the brief which defendants filed in the Circuit Court, nor from the vigor with which they have resisted recovery before and since the judgment. Class questions and the complications of Rule 23 were not the least among the factual and legal arguments which were fully explored in the course of this case through the courts. All these issues were handled clearly and skillfully by plaintiffs' counsel. Except for a portion of the relief to one of the numerous claimants and class members, the original decisions of the trial court were upheld on appeal. This factor justifies an upward adjustment of attorneys' fees.

3. *The skill required.*—Plaintiffs' attorneys have tried many Title VII cases in this court. Their work here is a classic demonstration of the clarity and factual accuracy of their day to day work in difficult factual and legal situations. It is possible to take the plaintiff's brief on appeal and determine what the case is about and what the law is and what the facts are and where to find pertinent information in the record. It is not so possible with the brief of the defendants-appellants. Plaintiffs' attorneys have done an excellent job and deserve to be compensated for it. This factor supports an upward adjustment of compensation.

4. *The preclusion of other employment by the attorneys who handled this case.*—This case has been pending for more than ten years. As of April 1982, plaintiffs' counsel had devoted almost 3,300 hours of lawyers' labor, plus thousands of hours of labor of law clerks and paralegals and secretaries and other skilled people. To that degree it has precluded other employment. It is also somewhat axiomatic that employers seldom hire plaintiffs' counsel to represent employers in Title VII cases. Lawyers usually have to decide whether to work one side or the other of a street where economic and emotional controversies are raging. Preclusion of other employment justifies some upward adjustment of compensation.

6. *Whether the fee is fixed or contingent.*—This is a contingent fee case. Plaintiffs' counsel could not get paid unless they won. There was a tremendous risk in the case. Numerous new issues were raised and had to be dealt with at the factual level and at the legal level. The attitude of the defendants as set forward in the original pleadings and at every stage of the contest in this court and in the Circuit Court of Appeals was that there was no liability to the plaintiffs for anything, and that nothing about the postal operation needed to be changed. Mounting evidence to the contrary produced no change in their attitude. The defendants-appellants' fifty-page brief in the Circuit Court attacks all parts of the award and the way they were arrived at and it attacks the evidence and the findings on all major points.

(At the argument of the fee question, counsel for the defendants asserted that the war was over as soon as the trial court's findings of fact and conclusions of law had been entered and implied that it was really a pretty clear case all along. Counsel now representing the defendants are not the same lawyers who represented the defendants in the trial court and in the Fourth Circuit Court of Appeals. If present counsel for the defendants will read the brief which was filed on behalf of the defendants by the lawyers then representing the defendants, they will see that there is not the slightest suggestion in that brief that the litigation is over or

that the Circuit Court should do anything but reverse the trial court on every single disputed question. Present counsel appear not to understand the burden which a winner continues to have until the last shot on the last petition for rehearing has been fired.)

This was a high risk case and because of that contingency feature the "lodestar" award should be substantially increased for all legal services rendered, at least up through December 31, 1981, the end of the "contingency" period. *See, e.g., Hensley v. Eckerhart, supra,* —— U.S. at ——, 103 S.Ct. at 1948–49 (Brennan, J., concurring in part and dissenting in part); *Graves v. Barnes, supra.*

7. *Time limitations imposed by client or circumstances.*—This factor should not affect the assessment of fees.

8. *The amount involved and the results obtained.*—The amounts of money involved are substantial. Claims of many employees have yet to be appraised and adjudicated or settled in Stage II proceedings. I have no book on the actual dollar cost (other than counsel fees) to the Postal Service up to now which has been involved in compliance with the award. Some things, however, are clear:

(a) The "tough" attitude of the defendants toward recognizing black employees as entitled to equal employment opportunity has been changed.

(b) Black employees are now eligible to be rural mail carriers and postmasters.

(c) No contention is now being made that blacks are not entitled to equal opportunity in employment. The territory served by or through the Charlotte Post Office now apparently attempts to comply with Title VII.

(d) Consent orders entered in November 1982 concerning criteria for future details and future administration of discipline have substantially changed the practices of the defendants with respect to two of the primary issues at trial; the Postal Service now administers discipline and assigns details under objective, reviewable criteria.

(e) The promotion and discipline claims of over 100 class members have been settled under the Partial Consent Judgment of July 20, 1983; the Consent Judgment affords immediate monetary relief of about two million dollars, as well as substantial other relief—in the form of promotions, promotion opportunities, and intangible benefits—that is not readily quantifiable.

These are major accomplishments and they have been brought about not by eagerness or willing compliance by the former postal administrators, but by the pressure of this suit and the law of the land, exercised through the courts by competent counsel. The results justify a substantial upward adjustment of the attorneys' fees. *See Hensley v. Eckerhart, supra,* —— U.S. at ——, 103 S.Ct. at 1940.

9. *Experience, reputation and ability of the attorneys.*—Plaintiffs' counsel are widely experienced in Title VII and similar litigation. They practice it regularly. Their reputation and their ability are excellent. They habitually face vigorous defense and habitually stand up to it, and they win those cases which they should win. The demonstrated quality, reputation and abilities of the plaintiffs' attorneys justify an increase in the award.

10. *Undesirability of the case.*—Some lawyers will not handle Title VII cases. Few lawyers can finance a case of this sort. (The record shows that totally apart from the contingent investment of time of firm members, plaintiffs' counsel have advanced in out-of-pocket expenses more than $57,-000.00 and have spent in wages of law clerks and other persons at least an equal amount. The expenses of operating their law offices go on at a rate that, if they are like similar firms, currently may consume one-half or more of their gross income.)

11. *The nature and length of professional relationship with the client.*—Plaintiffs and the other claimants are one-time clients, but the relationship is already ten years in duration and the time of its termination is not in sight. I do not know how

to give this factor any particular weight in this award.

12. *Awards in similar cases.*—The award made herein is well within the reasonable range of fees allowed in comparable cases. *See, e.g., Graves v. Barnes,* 700 F.2d 220 (5th Cir.1983) (affirming multiplier of 2.0); *In re Chicken Antitrust Litigation,* 560 F.Supp. 963, 989–997 (N.D.Ga.1980) (multiplier of 1.75 to 2.25); *Stanwood v. Green,* 559 F.Supp. 196 (D.Ore.1983) (rates up to $115 per hour with multiplier of 1.75); *White v. Richmond,* 559 F.Supp. 127 (N.D. Cal.1982) (1.5 multiplier); *Ruiz v. Estelle,* 553 F.Supp. 567 (S.D.Tex.1982) (fees at $75 to $150 per hour with 2.0 multiplier; total fees allowed were $1,662,683.00); *Tasby v. Wright,* 550 F.Supp. 262 (N.D.Tex.1982) (increase of 30% to 50% above rates allowed); *Rajender v. University of Minnesota,* 546 F.Supp. 158 (D.Minn.1982) (treble fees based on hourly rates of $125 and $80 allowed against the University of Minnesota for violations of Title VII and pertinent federal statutes; total fees allowed were $1,842,037.40); *Bagel Inn, Inc. v. All Star Dairies,* 539 F.Supp. 107 (D.N.J.1982) (fees at $85 to $175 per hour with 2.1 multiplier); *Vulcan Society of Westchester County, Inc. v. Fire Dept.,* 533 F.Supp. 1054 (S.D.N.Y. 1982) (1.5 multiplier); *Criswell v. Western Airlines,* 29 FEP Cases 363 (C.D.Cal.1981) (fees at $85 to $112 per hour with 1.5 multiplier).

After consideration of the foregoing and of pertinent decisions in comparable cases from other courts, and of the purpose of the statute providing attorneys' fees for successful civil rights plaintiffs, I have reached the further conclusion that plaintiffs are entitled to a substantial upward adjustment of the portion of their time which is, beyond serious question, the contingent time of lawyers themselves. That item (paragraph 5 above) is $300,543.50. The upward adjustment of that item will be from $300,543.50 to $400,443.50. The other items of recovery of fees and expenses will be as set out in paragraph 5, above, so that the total amounts herein directed to be paid by the defendants to the plaintiffs for attorneys' fees and expenses are as follows:

(a) For 3,280.15 hours of contingent attorneys' time: ................... $300,543.50

(b) For 301.95 hours of non-contingent attorneys' time: ..................... 27,260.50

(c) For 1,605.75 hours of work done by paralegals and law clerks: ............. 32,245.00

(d) For out-of-pocket expenses: ....... 57,605.86

(e) For additional upward adjustment of fee award: ........................ 100,000.00

Total: $517,654.86

LESS amount previously awarded and paid: 235,000.00

Amount due: $282,654.86

IT IS THEREFORE ORDERED that defendant shall pay to plaintiffs' counsel the sum of $282,654.86.

## PLAINTIFFS' SUPPLEMENTAL MOTION CONCERNING FEES

Plaintiffs file this motion superseding all previous motions for fees and move the Court for an order of counsel fees, costs, and expenses. In support of this motion, plaintiffs show the Court as follows:

1. Plaintiffs hereby incorporate herein the First Affidavit of Jonathan Wallas, the Affidavit of Barry L. Goldstein, the Affidavit of Gail J. Wright, and the Affidavit of Bill Lann Lee, all filed September 10, 1980, the Second Affidavit of Jonathan Wallas filed on September 17, 1980, and the Third Affidavit of Jonathan Wallas, the Supplemental Affidavit of Bill Lann Lee, the Affidavit of Beth Joan Lief, and the Affidavit in Support of Plaintiffs' Request for Attorneys Fees (of Peter O. Sherwood), all filed May 5, 1982. In addition, plaintiffs respectfully refer the Court to their memoranda concerning fees, one filed September 10, 1982 and one being filed contemporaneously herewith.

2. Plaintiffs are the prevailing parties in this case. Plaintiffs have prevailed in all respects with regard to the issues tried and affirmed on appeal. The time for defendants to seek review of this case in the Supreme Court of the United States has expired. Plaintiffs are thus entitled to an award of fees for work done.

In this motion, plaintiffs seek fees for time spent by their counsel from the begin-

ning of the case to April 30, 1982; however, no claim is now made for time spent during this period with respect to those matters raised in plaintiffs' proposed Supplemental Complaint.

3. A summary of the affidavits filed by plaintiffs' counsel shows the following:

### A. Attorney Time – Contingent Time

From 1980 Affidavits

| Name | Hours | Current 1982 Hourly Rate | Lodestar Award |
|---|---|---|---|
| Chambers | 247.00 | $110/hr. | $ 27,170.00 |
| Daly | 4.40 | 90/hr. | 396.00 |
| Lesesne | 306.25 | 90/hr. | 27,562.50 |
| Wallas | 1,487.25 | 90/hr. | 133,852.50 |
| Goldstein | 27.50 | 90/hr. | 2,475.00 |
| Lee | 624.30 | 90/hr. | 56,187.00 |
| Wright | 31.30 | 90/hr. | 2,817.00 |

From 1982 Affidavits (Sept. 1980 to Dec. 1981)

| Name | Hours | Current 1982 Hourly Rate | Lodestar Award |
|---|---|---|---|
| Chambers | 19.50 | 110/hr. | 2,145.00 |
| Lesesne (with Chambers Firm) | 18.40 | 90/hr. | 1,656.00 |
| Lesesne (After leaving Chambers Firm) | 19.75 | 90/hr. | $ 1,777.50 |
| Wallas | 246.50 | 90/hr. | 22,185.00 |
| Lee | 145.40 | 90/hr. | 13,086.00 |
| Lief | 93.10 | 90/hr. | 8,379.00 |
| Sherwood | 9.50 | 90/hr. | 855.00 |
| | | TOTAL | $300,543.50 |

### B. Attorney Time – Non-Contingent Time

From 1982 Affidavits (January 1982 through April 1982)

| Name | Hours | Current 1982 Hourly Rate | Lodestar Award |
|---|---|---|---|
| Adkins | 11.75 | 90/hr. | $ 1,057.50 |
| Chambers | 4.25 | 110/hr. | 467.50 |
| Lesesne | 37.75 | 90/hr. | 3,397.50 |
| Wallas | 246.50 | 90/hr. | 22,185.00 |
| Lief | 1.20 | 90/hr. | 108.00 |
| Lee | .50 | 90/hr. | 45.00 |
| | | TOTAL | $ 27,260.50 |

### C. Paralegal and Law Clerk Time

From 1980 Affidavits

| Description | Hours | Rate | Lodestar Award |
|---|---|---|---|
| Chambers' Firm | 1,364.75 | $20/hr. | $ 27,295.00 |
| Lester Jones (LDF) | 191.00 | 20/hr. | 3,820.00 |
| Marty Mador | 24.00 | 20/hr. | 480.00 |

From 1982 Affidavits

| Description | Hours | Rate | Lodestar Award |
|---|---|---|---|
| Chambers' Firm | 26.00 | $25/hr. | 650.00 |
| | | TOTAL | $ 32,245.00 |

### D. Costs and Expenses

From 1980 Affidavits

| Description | Lodestar Amount |
|---|---|
| Chambers' Firm | $10,552.94 |
| Expenses of Gail Wright | 192.90 |
| Expenses of Bill Lee | 3,053.72 |
| LDF Deposition Costs | 1,619.57 |
| Expenses of Lester Jones | 393.37 |
| Expenses of Marty Mador | 12.58 |
| James Outtz, Ph.D (fees) | 4,955.00 |
| Expenses of James Outtz | 539.40 |
| LDF Expenses (copying) | 1,076.70 |
| Additional LDF Paralegal Expenses | 340.00 |
| LDF Telephone Expenses | 219.48 |
| LDF Miscellaneous Expenses | 299.74 |
| Hoffmann Research Associates | 32,133.69 |

From 1982 Affidavits

| Description | Lodestar Amount |
|---|---|
| Chambers' Firm | 2,131.32 |
| Lesesne Firm | 40.00 |
| LDF Expenses | 45.45 |
| TOTAL | $57,605.86 |

### E. Summary

| | |
|---|---|
| Contingent Fee Time | $300,543.50 |
| Non-contingent Fee Time | 27,260.50 |
| Total Paralegal and Law Clerk Expenses | 32,245.00 |
| Total Costs and Expenses | $ 57,605.86 |

4. This action was contingent in nature until at least January 1, 1982. (Defendants retained the right to petition the Supreme Court for review until late February, 1982.) Plaintiffs' attorneys were only to be paid if they were successful. The litigation has involved an enormous outlay of counsel's time to deal with the many complex facts and issues presented. The defendants have actively contested plaintiffs on every point and sought in the Court of Appeals a complete reversal of the decision of this Court. Plaintiffs have prevailed thoroughly and completely with respect to the matters raised in this litigation. For these reasons and for the reasons set forth in plaintiffs' memoranda on fees, plaintiffs believe that a multiplier of a minimum of 2.0 of the contingent fee time is appropriate in this case.

5. For the reasons set forth above, plaintiffs believe that plaintiffs' contingent fee total of $300,543.50 should be multiplied by 2.0 for a sum of $601,087.00 to which should be added plaintiffs' non-contingent fee time of $27,260.50, paralegal and law clerk expenses of $32,245.00 and costs and expenses

of $57,605.86 for a total award of $718,198.36.

WHEREFORE, plaintiffs pray that counsel for plaintiffs be awarded counsel fees, costs, and expenses for work done through April 30, 1982 in the amount of $718,198.36 (less the sum of $235,000 previously awarded and paid). Additional fees, costs, and expenses should be awarded in the future for work performed after April 30, 1982 by counsel for plaintiffs.