Eddie Mitchell TASBY, et al., Plaintiffs,

v.

Dr. Linus WRIGHT, General Superintendent, Dallas Independent School District, et al., Defendants.

Civ. A. No. 3–4211–H.

United States District Court, N.D. Texas, Dallas Division.

Aug. 27, 1982.

---

Edward B. Cloutman, III, Mullinax, Wells, Baab, Cloutman & Chapman, Patrick A. White, Dallas Legal Services Foundation, Inc., Dallas, Tex., for plaintiffs.

Mark Martin and Robert H. Thomas, Strasburger & Price, Dallas, Tex., for DISD, Wright, et al.

Thomas I. Atkins, Gen. Counsel NAACP Special Contribution Fund, New York City, Ernest Lemuel Haywood, DeSoto, Tex., for NAACP (intervenor).

James A. Donohoe, Gardere & Wynne, Dallas, Tex., for Brinegar, et al. (intervenor).

Robert L. Blumenthal and John Martin and George Kryder, Carrington, Coleman, Sloman & Blumenthal, Dallas, Tex., for Curry, et al. (intervenors).

H. Ron White, H. Ron White & Associates, Dallas, Tex., for Dallas Alliance (amicus curiae).

E. Brice Cunningham, Dallas, Tex., for Cunningham and Dockery (intervenors).

Joan T. Winn, Dallas, Tex., for Black Coalition to Maximize Educ. (intervenor).

## AMENDED MEMORANDUM OPINION AND ORDER REGARDING ATTORNEYS' FEES

SANDERS, District Judge.

This school desegregation case is once again before the Court, this time on the several applications for attorneys' fees filed by Plaintiffs Tasby, et al., and Intervenors NAACP, Black Coalition to Maximize Education, and Cunningham. For the reasons set forth herein, the Court is of the opinion that the applicants are prevailing parties and are entitled to recover reasonable attorneys' fees and necessary expenses from Defendant Dallas Independent School District ("DISD").

## Background

The Court's task is to decide reasonable attorney's fees in proceedings which have spanned more than a decade. Only one award of attorneys' fees has been made—in 1976 to Plaintiffs' attorneys, Mr. Edward Cloutman and Ms. Sylvia Demarest, in the amount of $88,038.80, for services since the suit was filed in 1970. Many parties and a multitude of complex legal and factual issues have been before the Court since the inception of this litigation. Scores of hearings have been held and numerous rulings and opinions have been announced.

This case has been pending in one form or another since it was originally filed in October 1970 by Plaintiffs Tasby, et al., seeking an injunction requiring a comprehensive desegregation plan for the Dallas Independent School District. A brief summary of the history of the case is set forth in this Court's Opinion in *Tasby v. Wright,* 520 F.Supp. 683, 686–688 (N.D.Tex.1981). However, determination of the pending fee applications requires a somewhat more detailed history in order to set the stage for evaluation of the applications.

The original 1970 action was tried in July 1971 and the Court (Taylor, J.) decided that "elements of a dual system still remain" in DISD. *Tasby v. Estes,* 342 F.Supp. 945, 947, *aff'd in part, rev'd in part,* and *remanded with directions,* 517 F.2d 92 (5th Cir.1975). Judge Taylor ordered a limited desegregation plan which was the subject of appeals to the Fifth Circuit in 1971. The Fifth Circuit did not decide the case until 1975 when it disapproved Judge Taylor's limited desegregation plan and ordered the formulation of a new student assignment plan. 517 F.2d 92.

Pursuant to the remand, the Court held extensive hearings at which it considered six desegregation plans presented by the parties and amici curiae. The Court adopted a plan submitted by the Dallas Alliance and ordered DISD to plan the assignment details which were incorporated into a final Order entered April 7, 1976. The essential features of the Alliance plan may be sum-

marized in the following fashion. The school district was carved into six subdistricts; four of the subdistricts were geographically structured in such a way that their enrollments reflected the same racial composition as the overall school district, plus or minus five percent; another, East Oak Cliff, was predominantly black; and the sixth, Seagoville, was predominantly anglo and rural. (Seagoville's total enrollment represented a very small portion of the DISD student population.)

Within each of the subdistricts, students in grades kindergarten through three (K–3) were assigned according to then-existing assignment patterns, with special emphasis placed on compensatory education involving individualized, diagnostic-prescriptive methods of instruction. In grades 4–8, satellite zoning and mandatory transportation (involving over 15,000 students) were used to establish desegregated schools located around the center of each subdistrict. In grades 9–12, magnet schools and majority-to-minority transfer options were the principal tools of desegregation, leaving students who declined to opt for one of these programs attending the high school in their regular neighborhood attendance zones. Exceptions to the general student assignment patterns were made for students who resided in areas which were considered integrated by residential housing patterns and for students in the East Oak Cliff and Seagoville subdistricts.

The April 1976 Order was initially appealed to the Fifth Circuit by the Intervenor NAACP on the grounds that the plan instituted by the Court effected inadequate desegregation in grades K–3 and 9–12, that it created a segregated, all-black subdistrict in East Oak Cliff, and that it established a facility in the A. Harris shopping center (now the Nolan Estes Center) with an all-black attendance area. Plaintiffs Tasby, et al., subsequently joined the appeal but limited their protest to the inadequacy of the high school (9–12) desegregation plan. On April 21, 1978, the Fifth Circuit again remanded the case and directed this Court to make specific findings justifying the maintenance of any one race schools in DISD

and addressing the feasibility of using the desegregation techniques (*i.e.,* mandatory transportation) approved in *Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971) to eliminate any one-race schools. *Tasby v. Estes,* 572 F.2d 1010, 1018 (5th Cir.1978). In particular, the Circuit expressed concern about the number of one race schools in grades K–3 and 9–12, and in East Oak Cliff. The Circuit also ordered a reevaluation of the magnet school concept and consideration of assigning anglo students to the A. Harris Center.

The Fifth Circuit opinion was appealed by DISD and two intervenors aligned with the DISD to the Supreme Court of the United States which granted certiorari on February 21, 1979. After oral argument the Supreme Court on January 21, 1980, dismissed the grant of certiorari as improvidently granted, thus returning the case once again to this Court. 444 U.S. 437, 100 S.Ct. 716, 62 L.Ed.2d 626 (1980). Thereafter, Judge Taylor ordered time and distance studies and directed the parties to negotiate in an effort to reach an agreement on a desegregation plan; those negotiations were unsuccessful. Trial was set for March 30, 1981. On March 20, 1981, however, Judge Taylor recused himself in response to a disqualification motion filed by the Intervenor NAACP and the case was assigned to the undersigned Judge for trial. Trial commenced April 27 and concluded May 22, 1981.

On August 3, 1981, this Court (Sanders, J.) issued its opinion which concluded "that vestiges of state-imposed racial segregation remained in the Dallas Independent School District (DISD)." *Tasby v. Wright,* 520 F.Supp. at 686. In addition, the Court held that "additional systemwide transportation is not a feasible remedy for the existing constitutional violation," and that other effective remedies could be developed. The Court directed the parties to submit desegregation plans in accordance with guidelines set out in the Opinion. Proposed desegregation plans were filed by DISD, by Intervenor Black Coalition, and jointly by the

Plaintiffs and Intervenor NAACP. A major provision of the DISD plan involved a concept entitled "Minority Neighborhood Option Plan" (MNOP) which would have allowed minority children to choose whether or not to be transported to desegregated schools in grades 4 through 8. This provision was vigorously opposed by Plaintiffs and Intervenor NAACP. In November 1981 the Court held several extensive settlement conferences with those parties who had submitted desegregation plans. Those conferences culminated in a Stipulation filed December 2, 1981, which resolved many of the issues that had been in dispute. On December 7, 1981, the Court ruled that the MNOP was not an acceptable desegregation remedy within the constraints of the Fifth Circuit remand. Hearing then proceeded on the proposed desegregation plans; on December 21, 1981, the Court issued its Order outlining the major elements of the desegregation plan which had been adopted by the Court. On February 1, 1982, a Final Judgment was entered from which several parties now appeal.

The matter of attorneys fees has been before the Court on other occasions, but only one award has been made. On July 20, 1976, Judge Taylor rendered a Memorandum Opinion awarding attorneys' fees, costs and expenses to Plaintiffs Tasby, et al., as the prevailing parties in the case. *Tasby v. Estes,* 416 F.Supp. 644, 648 (N.D.Tex.1976). On May 4, 1978, the NAACP filed a motion for attorneys' fees and costs covering the period from July 29, 1975, through May 3, 1978. On March 12, 1980, the NAACP filed a "consolidated amended motion" for attorneys' fees, seeking such fees for the period through January 21, 1980. On August 7, 1980, Judge Taylor conducted a hearing on the motions (as well as motions for further attorneys' fees filed by the plaintiffs) and received a Stipulation of the parties. The Stipulation acknowledged certain figures as reasonable hourly rates "if attorneys' fees should be calculated at an hourly rate." It also established the number of hours spent by counsel for the NAACP during various phases of the case. Expressly reserved as defenses were the DISD's contentions that

an award of attorneys' fees would be premature; that the NAACP was not a prevailing party; that fees for the NAACP were foreclosed by the Court's 1976 award to Plaintiffs; that not all of the hours spent by Plaintiffs and NAACP were reasonably necessary; and that hours alone should not determine the fee.

On September 9, 1980, Judge Taylor decided that it was impossible at that time to identify the "prevailing parties" on appeal until the outcome of further proceedings in the trial court. *Tasby v. Estes,* 498 F.Supp. 1130, 1132 (N.D.Tex.1980). The Court therefore kept under advisement the applications filed by the Plaintiffs' lead counsel and by counsel for the NAACP. The Court denied the fee application of Mr. James M. Nabrit, III, of the NAACP Legal Defense and Education Fund (LDF), holding that Mr. Nabrit's efforts on the Plaintiffs' brief to the U.S. Supreme Court had not been reasonably necessary and had resulted in duplication of effort. The Plaintiffs successfully appealed from this decision; the portion of the opinion relating to Mr. Nabrit was vacated and remanded by the Fifth Circuit on July 17, 1981. *Tasby v. Estes,* 651 F.2d 287 (5th Cir.1981). The NAACP appeal was dismissed by the Fifth Circuit for lack of jurisdiction. *Dallas Branch of the NAACP v. Estes,* No. 80–2036 (5th Cir. Jan. 19, 1981).

It is evident from the foregoing summary that this case has involved many stages, many parties, and many issues. The Court believes that it would be incorrect, legally and equitably, to view legal battles extending over almost twelve years as a single proceeding or entity. Instead, the Court finds that there are several distinct break points in the case. These points provide a framework for the analysis of attorneys' fees for each segment of this litigation. The Court has therefore divided the course of this litigation into three phases. Phase I runs from October 1970, when the case was originally filed, until entry of Judge Taylor's order and adoption of the Dallas Alliance desegregation plan on April 7, 1976. Phase II is the period from April 7, 1976,

until January 21, 1980, when the Supreme Court dismissed the grant of certiorari and returned the case to this Court. Phase III begins January 21, 1980, and will include services and time to July 23, 1982, the date of the last hearing before the Court. Each of the pending applications for attorneys' fees will be analyzed within this framework.

### The Pending Applications

As the Court noted in its August 3, 1981, Opinion, "the cast of characters appearing before the Court has changed noticeably since 1976, and in some respects has changed radically since these proceedings were initiated in 1971." *Tasby v. Wright*, 520 F.Supp. at 689. The pending fee applications reflect these changes in parties and attorneys. The applications are by four major participants in this litigation: Plaintiffs, the Intervenor NAACP, the Intervenor Cunningham and the Intervenor Black Coalition. These four parties, however, have been represented by several different attorneys who are asking for compensation for work performed at different stages of the litigation.

The Plaintiffs represent a class of black and hispanic students and have been chiefly represented by Mr. Ed Cloutman since this litigation was commenced in 1970. At different times, however, services on behalf of the Plaintiffs have been provided by Attorney Ashton of the Dallas Legal Services Foundation, and by Attorneys Nabrit and Ralston of the NAACP Legal Defense Fund, Inc. Intervenor NAACP, representing a class of black students, has likewise had a number of attorneys working in its behalf since it entered the litigation in 1975. Mr. Cunningham represented Intervenor NAACP during Phase II, the Black Coalition for a short period of time in Phase III, and the Cunningham Intervenors during the remainder of Phase III. During Phase II and Phase III, attorneys for the NAACP National Office and Mr. Ernest Haywood appeared on behalf of the Intervenor NAACP. The Black Coalition, which intervened during Phase III, has been represented by Ms. Joan Winn.

The Court outlines below the pending applications which are now ripe for adjudication:

### Summary of Pending Applications for Attorney Fees

#### A. Plaintiffs

| Period Covered | Attorney | Hours | Requested Rate |
|---|---|---|---|
| **PHASE I** | | | |
| 1970 – June 30, 1976 | Demarest | | |
| | Cloutman | | $88,038.80 |
| | | | 33,420.78 |
| Total Fees and Costs – Paid 7/30/76 | | | $121,459.58 |
| **PHASE II** | | | |
| June 4, 1976 – January 21, 1980 | Cloutman | 299.3 * | $100/hr. (Stipulated) |
| April 5, 1979 – October 29, 1979 | Nabrit | 313.5 | $160/hr. (Stipulated) |
| February 1, 1977 – January 2, 1980 | Ashton | 65.0 | $80/hr. (Stipulated) |
| **PHASE III** | | | |
| February 6, 1980 – January 31, 1981 | Cloutman | 216.5 | $100/hr. |
| February 3, 1981 – December 9, 1981 | Cloutman | 411.5 | $150/hr. |
| January 4, 1982 – April 26, 1982 | Cloutman | 45.75 | $175/hr. |
| April 30, 1982 – July 23, 1982 | Cloutman | 18.0 | $175/hr. |
| July 29, 1980 – September 24, 1980 | Legal Ass't. | 8.2 | $ 35/hr. |
| February 18, 1981 – December 9, 1981 | Legal Ass't. | 25.5 | $ 50/hr. |
| December 3, 1980 – March 16, 1981 | Ralston | 15.0 | $160/hr. |

## Summary of Pending Applications for Attorney Fees

### B. NAACP

**PHASE I**

| July 29, 1975 – March 31, 1976 | Cunningham | 444.0 (Stipulated) | $ 75/hr. (Stipulated) |
|---|---|---|---|

**PHASE II**

| April 1, 1976 – October 29, 1979 | Cunningham | 859.75 ** (Stipulated) | $100/hr. (Stipulated) |
|---|---|---|---|
| August 24, 1978 – August 29, 1978 | Lucas | 50.0 | $150/hr. |
| October 22, 1979 – January 21, 1980 | Berry | 21.5 | $150/hr. |
| October 22, 1979 – October 25, 1979 | Caldwell | 20.0 | $ 90/hr. |

**PHASE III**

| February 6, 1980 – June 11, 1980 | Cunningham | 23.6 | $185/hr. |
|---|---|---|---|
| April 10, 1980 – January 21, 1982 | Atkins | 292.95 | $150/hr. |
| June 10, 1980 – December 29, 1981 | Haywood | 656.0 | $125/hr. |
| September 9, 1980 – November 29, 1980 | Hubbard | 286.5 | $ 40/hr. |
| January 21, 1981 – April 2, 1981 | Demchak | 59.0 | $100/hr. |
| January 21, 1980 – April 11, 1980 | Berry | 37.5 | $150/hr. |

### C. Cunningham

**PHASE III**

| February 18, 1980 – July 9, 1981 | Cunningham | 319.2 | $185/hr. |
|---|---|---|---|
| July 24, 1981 – July 23, 1982 | Cunningham | 84.15 | $185/hr. |

### D. Coalition

**PHASE III**

| October 27, 1980 – February 5, 1981 | Cunningham | 43.0 | $185/hr. |
|---|---|---|---|
| March 6, 1981 – January 12, 1982 | Winn | 209.25 | $125/hr. |
| February 4, 1982 – May 26, 1982 | Winn | 33.5 | $125/hr. |
| July 13, 1982 – July 23, 1982 | Winn | 9.5 | $125/hr. |

\* After deducting 15.5 hours for school discipline portion
\*\* After deducting 8.25 hours for suburban school portion

## SUMMARY OF APPLICATIONS FOR EXPENSE REIMBURSEMENT

A. Plaintiffs

| 1. | (Cloutman) (II) | June 1976 – January 21, 1980 | $ 6,495.75 | |
|---|---|---|---|---|
| 2. | (Cloutman) (III) | February 1980 – November 1981 | $10,165.52 | |
| 3. | (Nabrit) | April 10, 1979 – Oct. 18, 1979 | $ 2,627.47 | |
| 4. | (Cloutman) (III) | December 1981 – April 1982 | $ 1,184.20 | $20,472.94 |

B. Black Coalition

| | March 1981 – January 15, 1982 | 367.45 |
|---|---|---|

C. NAACP

1. (Cunningham) July 29, 1975 – January 21, 1980

| Photocopies, postage and long distance telephone | $ 4,750.00 | |
|---|---|---|
| Travel | $ 4,743.50 | |
| | | $ 9,493.50 |

<u>SUMMARY OF APPLICATIONS FOR EXPENSE REIMBURSEMENT</u>

C. <u>NAACP</u>—Continued

 2. (Haywood) March 1981 – January 1982 $ 227.40

 3. (Atkins, et al.)

| | | | |
|---|---|---|---|
| Attorneys | $ 2,902.47 | | |
| Research | $ 1,794.19 | | |
| Expert Witness & Consultants | $ 2,661.95 (fees) | | |
| | $ 1,389.54 (exp.) | | |
| Court Reporters | $15,722.01 | | |
| Rent | | | |
| Office Space | $ 1,950.00 | | |
| Hotel | $ 2,072.63 | | |
| Telephone | $ 1,035.03 | | |
| Miscellaneous | | | |
| Office Supplies, Equipment & Printing | $ 2,972.12 | | |
| Travel | $ 9,700.94 | | |
| | | $42,200.88 | |
| | | | $51,921.78 |

TOTAL REQUESTED EXPENSE REIMBURSEMENTS $72,762.17

---

*Statutory Authority for the Award of Attorneys' Fees*

█ The Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988, provides that a district court may award the prevailing party in a civil rights action reasonable attorney's fees. The purpose of the Act is to ensure that individual plaintiffs, as "private attorneys general," will be able to assert and vindicate their civil rights in the courts. *See* S.Rep. No. 94–1011, 94th Cong., 2nd Session 2–5, *reprinted in* [1976] U.S.Code Cong. & Ad.News, 5908, 5910–13. The Act makes the award of attorney's fees a question of discretion for the court, reversible only for an abuse of discretion. *Morrow v. Dillard,* 580 F.2d 1284, 1300 (5th Cir.1978); *Sandford v. R.L. Coleman Realty Co.,* 573 F.2d 173, 179 (4th Cir.1978).

█ A prevailing party should recover an attorney's fee "unless special circumstances would render such an award unjust". *Johnson v. State of Mississippi,* 606 F.2d 635, 636 (5th Cir.1979) (cites omitted); *Hen-derson v. Fort Worth Independent School District,* 574 F.2d 1210, 1212 (5th Cir.1978), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1996, 60 L.Ed.2d 375 (1979); S.Rep. No. 94–1011, *supra* at 5908–5912; *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). Under Section 1988, prevailing parties are to be compensated for all time "reasonably" spent at rates comparable to those paid for similarly complex litigation. As the legislative history indicates:

It is intended that the amount of fees awarded under S.2278 be governed by the same standards which prevail in other types of equally complex federal litigation such as antitrust cases and not be reduced because the rights involved may be nonpecuniary in nature. The appropriate standards, *see Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir. 1974), are correctly applied in such cases as *Stanford Daily v. Zurcher,* 64 F.R.D. 680 (N.D.Cal.1974); *Davis v. County of Los Angeles,* 8 E.P.D. ¶ 9444 (C.D.Cal.

1974); and *Swann v. Charlotte-Mecklenburg Board of Education,* 66 F.R.D. 483 (W.D.N.C.1975). These cases have resulted in fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys. In computing the fee, counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, "for all time reasonably expended on a matter."

S.Rep. 94–1011, *supra,* at 5913.

■ The prevailing party is entitled to fees for appeal as well as for work at the trial level. *Miller v. Carson,* 563 F.2d 741, 756 (5th Cir.1977); *Gore v. Turner,* 563 F.2d 159, 163 (5th Cir.1977). There need be no finding of bad faith on the part of the defendants, *Gates v. Collier,* 559 F.2d 241, 242 (5th Cir.1977), nor must the defendants be guilty of intentional discrimination for liability to exist. *Brown v. Culpepper,* 559 F.2d 274, 278 (5th Cir.1977). In addition, attorneys' fees may be awarded for time expended in securing the fee claim. *Johnson v. State of Mississippi,* 606 F.2d at 638; *Knighton v. Watkins,* 616 F.2d 795, 800 (5th Cir.1980).

The Court has considered DISD's argument that authority to award attorneys' fees is governed, or at least limited, by a provision of the Emergency School Act of 1972, specifically, 20 U.S.C. § 3205 (formerly 20 U.S.C. § 1617), but finds that it is not supported by the legislative history or relevant case law. The Court finds no indication whatsoever that Congress intended to restrict the application of 42 U.S.C. § 1988 to those cases which meet the requirements of 20 U.S.C. § 3205. Indeed, this Court's review of cases arising since the enactment of Section 1988 discloses that most if not all courts have ignored Section 3205 and based their fee awards in school desegregation cases solely on Section 1988. In addition, the two statutes are similar and, as noted in *Wheeler v. Durham City Board of Education,* 585 F.2d 618, 621 (4th Cir.1978), "there is no indication that Congress intended the language of the two statutes to be interpreted differently." *Accord, Seattle School District No. 1 v. Washington,* 633 F.2d 1338, 1348 (9th Cir.1980), *aff'd,* —— U.S. ——, 102 S.Ct. 3187, 73 L.Ed.2d 896 (1982) (statutes "share the same language and are to be construed together"); *Northcross v. Board of Education,* 611 F.2d 624, 632 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980) ("no substantial difference between the provisions or purposes of the two statutes").

The Court also finds analogous and persuasive a line of cases arising under the Fair Housing Act which hold that where attorneys' fees may be awarded under two statutes, the Court should use the statute most generous to the plaintiffs. *See Dillon v. AFBIC Development Corp.,* 597 F.2d 556, 563 (5th Cir.1979); *Bunn v. Central Realty of Louisiana,* 592 F.2d 891 (5th Cir.1979); *Hughes v. Repko,* 578 F.2d 483, 488 (3d Cir.1978). By that standard Section 1988 must be used, rather than 20 U.S.C. § 3205.

■ The Court concludes that the award of attorneys' fees in this case is governed by 42 U.S.C. § 1988 and that there is no requirement that intervenors show that their participation was "necessary to bring about compliance."

### Definition of "Prevailing Party"

Before awarding attorneys' fees, the Court must determine whether applicants represented "prevailing parties". When a party obtains a verdict on all counts in a complaint, it is clear who prevailed. But when a party obtains only some of the relief requested, the question arises as to whether an award of attorneys' fees is appropriate.

In the Fifth Circuit a party may be "prevailing" without having succeeded on all issues. "The proper focus is on whether the plaintiff has succeeded on the central issue, as exhibited by the fact that he has obtained the primary relief sought." *Coen v. Harrison School Board,* 638 F.2d 24, 26 (5th Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 647 (1982); *Iranian Students Association v. Edwards,* 604 F.2d 352, 353 (5th Cir.1979). In *Familias Unidas v. Briscoe,* 619 F.2d 391 (5th Cir.1980), for example, the Circuit affirmed an award of

attorneys' fees although the plaintiffs were less than successful. One plaintiff was refused injunctive relief and another was refused actual damages. The Circuit held that the grant of declaratory relief on the central issue of the case (the constitutionality of a state law) and nominal damages justified an award of attorneys' fees. Also (and similar to the situation in the case *sub judice*), it was noted in *Familias* that the state officials had vigorously defended the constitutionality of the state law in question through six years of litigation.

As the Circuit further amplified in a recent case:

> The right to determined contest ... has a concomitant duty: the obligation to pay reasonably for the effort that a defense exacts from opposing counsel if the claim proves to be meritorious.

*Knighton v. Watkins,* 616 F.2d at 799.

■ The focus in determining prevailing party status is not on the form of the final judgment but on the substance of the relief. *Ross v. Horn,* 598 F.2d 1312, 1322 (3d Cir. 1979), *cert. denied,* 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980). "Even where the victory is only the vindication of the correctness of the plaintiff's position and, therefore, may be characterized as only moral vindication, counsel fees may be awarded." *Knighton v. Watkins,* 616 F.2d at 799; *Rainey v. Jackson State College,* 551 F.2d 672 (5th Cir.1977).

■ A prevailing party, therefore, need not have prevailed on all issues; it is sufficient that the party prevail on the main issue. *Ramos v. Koebig,* 638 F.2d 838, 845 (5th Cir.1981). The First Circuit adopted a rule in *Nadeau v. Helgemoe,* 581 F.2d 275, 278–279 (1st Cir.1978) that the amount of attorneys' fees should be based on the work performed on the issues on which plaintiffs were successful. In addition, the Court held that parties who are partially successful may only be prevailing parties if they "succeed on any significant issue in litigation which achieves some of the benefits the parties sought in bringing suit." *Id.* However, in *Miller v. Carson,* 628 F.2d 346, 348 (5th Cir.1980), the Fifth Circuit rejected that rule, stating that

[B]ecause issues may at times be reasonably related, we reject anything in *Nadeau* or *Sethy* [*v. Alameda County Water District,* 602 F.2d 894 (9th Cir.1979)] which insists that a district court must always sever an attorney's work into 'issue parcels' and then assess that work for purposes of a fee award in terms of the outcome of each issue standing alone. *Panior v. Iberville Parish School Board,* 543 F.2d 1117, 1119 & n. 2 (5th Cir.1976) (discussing legislative history); *Watkins v. Scott Paper Company,* 530 F.2d 1159, 1198 n. 53 (5th Cir.), *cert. denied,* 429 U.S. 861 [97 S.Ct. 163, 50 L.Ed.2d 139] (1976).

At the same time, case law has been somewhat unsettled as to whether a prevailing party should recover for time spent on legal theories that were not successful. In *Northcross v. Board of Education,* 611 F.2d 624 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980), the Sixth Circuit rejected the contention that a prevailing party should not receive a fee award for issues on which it did not prevail. The court in *Northcross* adopted a two step procedure. First, the court determines which party has prevailed by examining the claims on which each party was successful or unsuccessful. Second, if after taking into account the extent to which a party failed, it is still the prevailing party, it should receive a fee for all the time reasonably spent on the entire case. *Id.* at 636; *see also Vaughn v. Trotter,* 516 F.Supp. 902, 904 (M.D.Tenn.1981); *Brady v. Washington County,* 509 F.Supp. 538, 542–43 (E.D.Tenn.1979). The Ninth and the Tenth Circuits have endorsed the reasoning of the Sixth Circuit, *Gurule v. Wilson,* 635 F.2d 782, 793–94 (10th Cir. 1980); *Seattle School District No. 1 v. Washington,* 633 F.2d at 1349–50, but have indicated that a court can exclude from a fee award issues on which a party was unsuccessful. *Harmon v. San Diego County,* 664 F.2d 770 (9th Cir.1981); *Southeast Legal Defense Group v. Adams,* 657 F.2d 1118 (9th Cir.1981). But according to the Eighth Circuit, a fee award should not be

reduced for unsuccessful issues unless they were clearly frivolous. *Brown v. Bathke,* 588 F.2d 634 (8th Cir.1978).

Some cases in the Fifth Circuit have seemed to indicate that the prevailing party should receive an award only for the time spent on those issues on which it was successful, unless the evidence gathered on the unsuccessful issues was "relevant" to, or "overlapped" with, the successful issues. *See Wilson v. Taylor,* 658 F.2d 1021 (5th Cir.1981); *Clanton v. Orleans Parish School Board,* 649 F.2d 1084, 1102–3 (5th Cir.1981); *Familias Unidas v. Briscoe,* 619 F.2d at 406. However, the Fifth Circuit standard has been recently clarified by the *en banc* opinion in *Jones v. Diamond,* 636 F.2d 1364 (5th Cir.), *cert. granted sub nom.,* 452 U.S. 959, 101 S.Ct. 3106, 69 L.Ed.2d 970, *cert. dismissed,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981). The *en banc* Circuit noted that "in complex civil rights litigation . . . issues are overlapping and intertwined", and "attorneys must explore fully every aspect of the case, develop all the evidence and present it to the court." *Id.* at 1382. When faced with interrelated claims, a court must "consider the relationship of the claims that resulted in judgment with the claims that were rejected and the contribution, if any, made to success by the investigation and prosecution of the entire case." *Id. Dunten v. Kibler,* 518 F.Supp. 1146, 1149 (N.D.Ga.1981), interpreted *Jones v. Diamond* to hold that a litigant should be compensated for unsuccessful claims unless they are clearly without merit and without any relationship to the successful claim. In *Dowdell v. Apopka,* 521 F.Supp. 297, 301 (M.D.Fla.1981) the court allowed an award for seven claims although the plaintiffs prevailed on only two, because the others were not "clearly meritless."

■ Indeed, school desegregation cases "invariably involve multiple parties and multiple issues." *United States v. Waterbury Board of Education,* 605 F.2d 573, 576 (2nd Cir.1979). As the court pointed out in *Seattle School District,* 633 F.2d at 1349–50:

It is usually impossible to determine in advance of trial which issues will be reached or which parties will play pivotal roles in the course of the litigation. To retrospectively deny attorney's fees because an issue is not considered or because a party's participation proves unnecessary would have the effect of discouraging the intervention of what in future cases may be essential parties. "The complex nature of school desegregation cases requires that attorney's fees be approached with flexibility if Congress' goal in enacting these statutes is to be realized." *United States v. Waterbury Bd. of Education,* 605 F.2d 573, 576 (2nd Cir.1979).

Therefore, the fact that parties do not "succeed in obtaining a judgment on all the claims asserted does not mean that time pursuing those claims should automatically be disallowed." *Jones v. Diamond,* 636 F.2d at 1382. This is not to say, however, that a court may not discount time where duplication in services has occurred. *See Taylor v. Sterrett,* 640 F.2d 663, 670 (5th Cir.1981); *Johnson v. Georgia Highway Express,* 488 F.2d 714, 717 (5th Cir.1974); *Neely v. City of Grenada,* 624 F.2d 547, 552 (5th Cir.1980); *Flowers v. Wiley,* 675 F.2d 704 (5th Cir. 1982).

■ The Circuit has also held that "an attorney's standard hourly billing rate should probably be enhanced somewhat for an award of fees under Section 1988 due to the contingent nature of such an award." *Schneider v. City of Atlanta,* 628 F.2d 915, 920 (5th Cir.1980) (cites omitted). Any multiplier, however, is not to be applied to hours spent determining attorneys' fees. *Flowers v. Wiley, supra,* at 2395.

### Determination of "Prevailing Party"

For Phase I of this litigation (October 1970—April 1976), the Court (Taylor, J.) has already concluded that the Plaintiffs Tasby, et al., were the prevailing parties. *Tasby v. Estes,* 416 F.Supp. at 648. The Court held that the school desegregation plan it had adopted "incorporated almost every precept proposed by plaintiffs for both student assignment and non-student assignment remedies." *Id.* at 647. The first question be-

fore this Court now is whether the 1976 award of fees to Plaintiffs' attorneys forecloses an award to the Intervenor NAACP's attorney, Mr. Cunningham, for services in 1975–1976. DISD contends that language in Judge Taylor's opinion stating that "All other requests for attorneys' fees by any party are denied", *id.* at 648, disposes of the matter of fees for all attorneys during Phase I. DISD argues that it is inappropriate "to reopen long-standing orders disposing of completed phases of the litigation, for the purpose of awarding additional attorneys' fees ...." DISD's Brief in Opposition to Applications of NAACP and Cunningham Intervenors for Attorneys' Fees at 10–11.

The Court is unable to accept DISD's argument. In the first place, the NAACP's application for attorneys' fees for Phase I was not before the Court in 1976; it was not filed until 1978. Second, it seems almost fatuous for DISD to contend that entry of the April 1976 Order was considered at the time to be the end of this litigation. The NAACP was the first party to appeal the April 1976 decision and had filed its appeal when Judge Taylor granted attorneys' fees to Plaintiffs in July 1976. 416 F.Supp. 644. Further, there is no question presented here of reopening a judgment since large portions of the April 1976 judgment were put in question by the Fifth Circuit remand in 1978. As the Fifth Circuit has noted:

> Since most school cases involve relief of an injunctive nature, which must prove its efficacy over a period of time, it is obvious that many significant and appealable decrees will occur in the course of litigation which should not qualify as final in the sense of determining issues in controversy. The ultimate approach to finality must be an individual and pragmatic one.

*Johnson v. Combs,* 471 F.2d 84, 87 (5th Cir.1972). The Court concludes that there is no bar to the consideration of other applications for attorneys' fees for Phase I.

The second issue requiring decision for Phase I, and subsequently for Phases II and III, is whether the Intervenor NAACP prevailed in Phase I. DISD takes two somewhat inconsistent positions in its opposition to any identification of the NAACP as a prevailing party. Initially, DISD argues that the plans submitted by the NAACP and the Plaintiffs in 1976 are in large part similar. At the same time, DISD contends that the Court's finding that the Plaintiffs had prevailed because Judge Taylor had adopted "almost every precept" advanced by the Plaintiffs argues against holding the NAACP to be a prevailing party.

In fact, the 1976 plans submitted by the Plaintiffs and the NAACP shared many of the same characteristics. Both plans left naturally integrated elementary schools undisturbed, and proposed the use of magnet schools and special programs for the East Oak Cliff area. Both plans proposed accountability procedures. The NAACP's plan limited transportation time to 40 minutes, while the plaintiffs "strove" for 30 minutes. The DISD estimated at the time that Plaintiffs' Plan A would involve transportation of approximately 69,000 students, Plaintiffs' Plan B would involve transportation of 47,000 students and the NAACP's plan would involve transportation of approximately 40,000 students. The Court finds that, since Judge Taylor concluded that the Plaintiffs prevailed in Phase I, it also follows that the Intervenor NAACP prevailed.

For Phase II (April 1976—January 1980) the Court has applications from the Plaintiffs and the Intervenor NAACP. The NAACP's appeal from the April 1976 Judgment challenged the provisions of the plan regarding grades K–3 and 9–12, the all-black East Oak Cliff subdistrict and the A. Harris complex. Plaintiffs Tasby, et al., appealed the exclusion of grades 9–12 from any mandatory reassignment remedies. The appeals were successful; the Fifth Circuit remand of the 1976 desegregation plan was addressed to all of these issues.

During Phase II, furthermore, the NAACP and the Plaintiffs resisted the grant of certiorari by the Supreme Court, arguing that DISD was not unitary and

that the Fifth Circuit remand was correct and should be allowed to take effect. Ultimately, in January 1980, the Supreme Court accepted these arguments by dismissing the grant of certiorari. Thus, in view of the significant role of the NAACP and the Plaintiffs in securing Fifth Circuit review of the 1976 plan, putting forward the arguments upon which the Fifth Circuit remanded the case to this Court, and arguing a position which was adopted by the Supreme Court, this Court has concluded that the NAACP and the Plaintiffs prevailed in Phase II. The Court further finds that the NAACP Inc. Fund and its attorney, Charles Ralston, prevailed in the appeal to the Fifth Circuit regarding fees for Mr. Nabrit's contribution to the Supreme Court brief.

The Court turns next to Phase III (January 1980—to date). Pending before the Court are the applications of the Plaintiffs and the Intervenors NAACP, Black Coalition and Cunningham for attorneys' fees for Phase III. The Court is of the opinion that all four applicants prevailed in Phase III.

Each of these parties took some positions which were accepted and some which were either rejected or not adopted by the Court. In the final analysis, though, when viewed as a whole, the February 1, 1982, Judgment and the findings upon which. it is based reflect that these parties have "succeeded on the central issue". *Iranian Students Association v. Edwards,* 604 F.2d at 353. In large part, the Plaintiffs, the NAACP, the Black Coalition and the Cunningham Intervenors succeeded when the Court decided "that vestiges of state-imposed racial segregation remain in the Dallas Independent School District." *Tasby v. Wright,* 520 F.Supp. at 686. In addition, the Judgment adopted the suggestions of the Plaintiffs, the NAACP and the Cunningham Intervenors for attendance zone changes to increase the degree of desegregation within DISD. The proposal to eliminate the all-black subdistrict in East Oak Cliff was put forward initially by these parties, and was adopted in the Judgment, eliminating a major issue of contention in the 1976 plan. The special emphasis in the August 3, 1981,

Opinion (reiterated in the Final Judgment) on compensatory educational remedies for minority children rested to a considerable extent on the positions advanced by the Black Coalition. DISD argues that each of these parties failed to persuade the Court to adopt portions of their proposals and thus, they are not prevailing parties. In the alternative, DISD contends that a deduction should be made for unsuccessful claims advanced by each party. Following the benchmark set in *Jones v. Diamond,* 636 F.2d at 1382, however, the Court finds that the claims made by each party and their contributions were closely interrelated with the final plan adopted by this Court. The Court also notes that the Plaintiffs have reduced their application by 15.5 hours to reflect time expended on the unsuccessful school discipline portion of the litigation and have not requested fees for any time on the similarly unsuccessful suburban school action. The request for Cunningham on behalf of the NAACP has also been reduced by 8 hours and 12 minutes to reflect the hours claimed for the suburban school litigation.

The Court therefore concludes that the Plaintiffs, the NAACP, the Black Coalition and the Cunningham Intervenors prevailed in Phase III.

*Determination of Fee Award*

A. *Applicable Legal Standards*

 In awarding statutorily authorized attorneys' fees in this Circuit, district courts must follow the guidelines set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974); *see also Fain v. Caddo Parish Police Jury,* 564 F.2d 707, 710 (5th Cir.1977); *Matter of First Colonial Corp. of America,* 544 F.2d 1291, 1299 (5th Cir.), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). *Johnson* lists twelve factors as bearing on the question of reasonable attorneys' fees:

(1) The time and labor required,

(2) The novelty and difficulty of the questions,

(3) The skill requisite to perform the legal service properly,

(4) The preclusion of other employment by the attorney due to acceptance of the case,

(5) The customary fee,

(6) Whether the fee is fixed or contingent,

(7) Time limitations imposed by the client or the circumstances,

(8) The amount involved and the results obtained,

(9) The experience, reputation, and ability of the attorneys,

(10) The "undesirability" of the case,

(11) The nature and length of the professional relationship with the client, and

(12) Awards in similar cases.

488 F.2d at 717–19. In computing reasonable attorneys' fees, a district judge must "explain the findings and reasons upon which the award is based, including an indication of how each of the twelve factors in *Johnson* affected his decision." *Matter of First Colonial Corp. of America,* 544 F.2d at 1300. "What [the circuit] require[s] is not a meaningless exercise in parroting and answering of *Johnson's* twelve criteria, but some assurance that the court has arrived at a just compensation based on appropriate standards." *Davis v. Fletcher,* 598 F.2d 469, 470–71 (5th Cir.1979); *see Fain v. Caddo Parish Police Jury,* 564 F.2d at 709.

The Fifth Circuit has encouraged district courts to apply the *Johnson* text flexibly in computing attorneys' fees. At the same time, a court must properly explicate the bases of its decision in order to allow proper review of the propriety of a fee award. *Fain v. Caddo Parish Police Jury,* 564 F.2d at 709; *see also, Mitchell v. Scheepvaart Maatchappij Trans-Ocean,* 579 F.2d 1274, 1281 (5th Cir.1978); *Rainey v. Jackson State College,* 551 F.2d at 677. In *Matter of First Colonial Corp. of America,* 544 F.2d at 1299, for example, the Circuit stated that in computing attorneys' fees, a district court "must ascertain the nature and extent of the services supplied by the attorney". Next, the court should value the services according to the customary fee and quality of the legal work. *Id.* at 1300. Finally, the court should adjust the compensation on the basis of other *Johnson* factors that may be of significance because of the particular case. *See generally* Johnson & Blackburn, *First Colonial: The Fifth Circuit Makes a Definitive Statement on the Award of Attorneys' Fees in Bankruptcy Cases,* 24 Loy. L.Rev. 189 (1978).

As the Circuit has recently commented: The *Johnson* test, as interpreted in *First Colonial,* is similar to the Third Circuit's "lodestar" method of computing attorneys' fees. *See Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp.,* 3 Cir.1976, 540 F.2d 102, 112–18; *Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp.,* 3 Cir. 1974, 487 F.2d 161, 167–69; *accord, City of Detroit v. Grinnell Corp.,* 2 Cir.1977, 560 F.2d 1093, 1098–1103; *City of Detroit v. Grinnell Corp.,* 2 Cir.1974, 495 F.2d 448, 469–74; *Grunin v. International House of Pancakes,* 8 Cir., 513 F.2d 114, 128–29, *cert. denied,* 1975, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93; *Knutson v. Daily Review, Inc.,* N.D.Cal.1979, 479 F.Supp. 1263, 1268–72. Under the "lodestar" analysis, the district court must first determine the number of hours reasonably spent by the plaintiff's attorney on matters upon which the plaintiff was successful. Next, the court must ascertain the value of the attorney's time based on his or her normal billing rate. If a number of attorneys are involved, the court may use different rates to reflect the different amounts of skill, expertise, and experience possessed by the different attorneys. The court then must determine the "lodestar" amount by multiplying the hours spent by each attorney on the case by his or her respective hourly rate. Before arriving at a final award, at least two other subjective factors must be considered. The first is the contingent nature of success. The second factor is the extent to which any exceptionally positive or negative quality of an attorney's work mandates increasing or decreasing the lodestar. A fact to be considered in making this adjustment is the amount recovered

in damages as compared to the defendant's potential liability. *See Knutson v. Daily Review, Inc.,* 479 F.Supp. at 1269–70. *See generally* Comment, *Attorneys' Fees in Individual and Class Action Antitrust Litigation,* 60 Cal.L.Rev. 1656 (1972).

*Copper Liquor v. Adolph Coors Co.,* 624 F.2d 575, 583 n. 15 (5th Cir.1980).

The Court has considered the pending fee applications in the light of the *Johnson* factors and the "lodestar" method. Some of the *Johnson* factors have more relevance than others to this case. The Court has particularly noted (see discussion, *infra*) and given weight to the time and labor required; the novelty and difficulty of the legal issues in school desegregation cases and, particularly, one as complex and drawn out as this one; the skill which was required to perform the necessary services properly, diligently and efficaciously; the customary fees for services in civil rights litigation in this area; the contingent nature of the employment, *i.e.,* the recovery of attorney's fees by applicants was wholly contingent upon their prevailing in the litigation; the success of applicants' endeavors, viewed in three phases, separately and cumulatively; the experience, reputation and ability of the attorneys, *see infra;* the undesirability of the case; the nature and length of the professional relationship with the client; and fee awards in civil rights litigation in the Dallas Division. *See, e.g., Ligon v. Frito Lay,* No. CA–3–76–0901–F (N.D.Tex.1980) (sex discrimination case settled in 1980 after three years: fee of $110 per hour with multiplier of 1.5); *Wilson v. Southwest Airlines,* No. CA–3–80–0680–G (N.D.Tex.1981) (sex discrimination case settled in 1982 after two years, with attorneys' fees awarded at the hourly rate of $159). (The Court notes that both of these cases were settled.)

The Court has before it no significant evidence that this case precluded other employment for the applicant attorneys and therefore has not given that factor positive weight; however, in view of the reputation and experience of the attorneys, the Court is satisfied that it can reasonably infer that there was some preclusion of, or at least interference with, other employment. Nor has the Court given positive weight to time limitations imposed by the clients or the circumstances, although, again, the exigencies and pressures of trials and appeals in this case could reasonably be said to have occasionally put severe time limitations on these applicants.

### B. *Hourly Rates*

Stipulations have been entered between DISD and some of the parties concerning hourly rates for certain periods of this litigation. In August 1980, DISD and Mr. Cunningham, who had appeared on behalf of the Intervenor NAACP, agreed that an hourly rate of $75 in Phase I and $100 in Phase II would be reasonable for Mr. Cunningham. Similarly, Plaintiffs Tasby and DISD stipulated that $100 per hour would be a reasonable hourly rate for Plaintiffs' counsel during Phase II. Agreement was also reached between the Plaintiffs and DISD that a reasonable hourly rate for Mr. James Nabrit would be $160, and for Mr. Thomas Ashton, $80.

As to hourly rates for Phase III, attempt to reach agreement between DISD and Plaintiffs, Intervenors NAACP, Cunningham, and Black Coalition was made during this Court's hearing on attorneys' fees on April 30, 1982. At counsels' request the Court has taken under advisement the entire question of rates of compensation for the third phase of the litigation. In addition, the Court concludes it is not bound by agreements of counsel as to the hourly rates for Phases I and II but takes those agreements into consideration in its determinations of the fair level of compensation for the applicant attorneys.

### 1. *Plaintiffs*

Plaintiffs' attorney, Edward Cloutman, is an experienced member of the Texas Bar and one of the most able attorneys practicing before this Court in civil rights matters. Affidavits were submitted by Mr. Cloutman's colleagues which, consistent with his

performance in this Court, establish that Mr. Cloutman's reputation in the legal community in his fields of specialization is outstanding. Mr. Cloutman's practice has included extensive experience in federal court litigation at all levels. Since 1971, he has been involved in many appearances before the district and appellate courts in such landmark civil rights cases as *Lipscomb v. Jonsson,* 459 F.2d 335 (5th Cir.1972), *on remand sub nom. Lipscomb v. Wise,* 399 F.Supp. 782 (N.D.Tex.1975), *rev'd* 551 F.2d 1043 (5th Cir.1977); *rev'd* 437 U.S. 535, 98 S.Ct. 2493, 57 L.Ed.2d 411 (1970); *on remand* 583 F.2d 212 (5th Cir.1978); and *Johnson v. Combs,* 471 F.2d 84 (5th Cir. 1972), *cert. denied,* 413 U.S. 922, 93 S.Ct. 3063, 37 L.Ed.2d 1044 (1973).

The Court will accept the stipulated rate of $100 per hour for Mr. Cloutman's services in Phase II as reasonable in light of the agreement of the parties; the Court finds that the prevailing hourly rate in Dallas during the Phase II time period for this type of litigation was at least $100 per hour for an attorney of Mr. Cloutman's experience and reputation. The Court also accepts as reasonable, in light of the stipulation of the parties, the rates of $160 per hour requested for James Nabrit and $80 per hour for Thomas Ashton. Mr. Nabrit is an associate counsel for the NAACP Legal Defense and Educational Fund, Inc., and has served as counsel for plaintiffs in a large number of school desegregation cases since 1958. He has submitted briefs and argued before the Supreme Court in several landmark school cases, including *Monroe v. Board of Commissioners,* 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733 (1968); *Swann v. Board of Education,* 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971); and *Keyes v. School District No. 1, Denver, Colorado,* 413 U.S. 189, 93 S.Ct. 2686, 37 L.Ed.2d 548 (1973). Mr. Ashton was an attorney with the Dallas Legal Services Foundation at the time of his efforts on this litigation and had been in practice for approximately six years. His practice focused at that time primarily in the areas of civil rights, with particular emphasis on education and mental disability law. In view of the experi-

ence of both attorneys and their contributions to this litigation, the Court finds that the stipulated fees represent the prevailing hourly rate for civil rights litigation in this locality.

Charles Ralston is an assistant counsel with the NAACP Legal Defense and Educational Fund, Inc. He prepared the appellate brief before the Fifth Circuit on the district court denial of attorneys fees to Mr. Nabrit. Mr. Ralston has had extensive experience in the field of school desegregation law and prepared briefs on attorneys' fee questions in *Bradley v. School Board of the City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) and *Brown v. Culpepper,* 559 F.2d 274 (5th Cir.1977), *inter alia.* The Court finds that the requested rate of $160 per hour is fully justified in light of Mr. Ralston's experience and ability in this field of practice.

In Phase III, the hourly rates of $150 per hour in 1981 and $175 per hour in 1982 for Mr. Cloutman are fully justified in view of his experience, reputation and ability. As previously noted, Mr. Cloutman has proved his expertise in prior appearances before this Court and has once again demonstrated his ability by successfully prosecuting this case. The requested rates represent the prevailing hourly rates during 1981 and 1982 in the federal courts in Dallas for a civil rights attorney of his age, experience and competence. In addition, the Court finds that the requested rates of $35 per hour in 1980 and $50 per hour in 1981 are reasonable for the hours expended by Mr. Cloutman's legal assistant in view of the prevailing rates for this type of work in the Dallas legal community.

### 2. NAACP

Attorney Brice Cunningham has practiced law for over 21 years and has had considerable experience in civil rights and school desegregation litigation. He has represented the NAACP in several desegregation cases, including those involving the Wilmer-Hutchins school district and the Midland Independent School District, and has represented citizens groups involved

with the Richardson Independent School District. Mr. Cunningham was employed on July 29, 1975, by the three Dallas Branches of the NAACP and represented the NAACP in this litigation until June 1980. For a short period of time after that, Mr. Cunningham was attorney of record for the Intervenor Black Coalition and subsequently represented the Cunningham Intervenors during the bulk of Phase III of this litigation. Mr. Cunningham has taken an active role during this Court's supervision of the litigation and made significant contributions during the 1981 hearings and to the development of the desegregation plan now in effect in DISD. As pointed out earlier, stipulations have been entered into between Mr. Cunningham and DISD of a $75 per hour rate for Phase I, and $100 per hour for Phase II. While the Court concurs as to the rate for Phase II, it believes that the hourly rate for Mr. Cunningham for Phase I should not exceed the $60 per hour previously awarded to the Plaintiffs. For Phase III, the Court finds that an hourly rate of $125 is reasonable in view of Mr. Cunningham's experience and competence, and is consistent with the prevailing rate in Dallas for this type of litigation during the Phase III period.

Mr. Ernest Haywood served as the major representative of the Intervenor NAACP during Phase III of this litigation. Mr. Haywood entered the case in June 1980 after the withdrawal of Mr. Cunningham as attorney of record for the NAACP. Graduating from law school in 1974, Mr. Haywood was an assistant regional attorney with the United States Department of Health, Education and Welfare until June 1980 when he entered private practice. In view of the limited experience which Mr. Haywood had in this type of litigation prior to his appearance in this case, the Court finds that an hourly rate of $100 is reasonable and would be the prevailing rate in this area for an attorney with his background.

Mr. Thomas Atkins on behalf of the national office of the NAACP requests an hourly rate of $150 for hours expended during Phase III. Mr. Atkins has been involved in school desegregation litigation over the entire country and has appeared at all levels of the federal system. Mr. Atkins has represented private plaintiffs in school cases in Detroit, Benton Harbor and Kalamazoo, Michigan; Cleveland, Columbus and Cincinnati, Ohio; and Los Angeles, California. The Court finds that the requested rate of $150 per hour is commensurate with the prevailing rate for an attorney of Mr. Atkins' age, experience and competence in the field of school desegregation law. Similarly, based upon their experience in the school desegregation area as evidenced by the affidavit submitted by the NAACP Intervenors, the Court finds that the requested hourly rates of $150 for Louis Lucas, $90 for William Caldwell, $150 for Theodore Berry, $100 for Teresa Demchak, and $40 for legal assistant Wanda Hubbard, are reasonable in light of their age, experience and competence, and reflect the prevailing rates in the Dallas area for attorneys with similar backgrounds.

### 3. Black Coalition

Subsequent to the withdrawal of Mr. Cunningham as counsel for Intervenor Black Coalition, Ms. Joan Winn assumed representation for the Coalition and was an able advocate for the adoption of compensatory educational remedies to address vestiges of segregation remaining in the DISD. Ms. Winn has had a distinguished legal career since her graduation from law school over ten years ago. She has served as a state district court judge in Dallas, Texas, and in private practice has had significant experience in the area of civil rights. The Court finds that $125 per hour is the prevailing rate for an attorney of Ms. Winn's qualifications, experience and competence in the Dallas area. At this point, the Court notes that the bulk of Mr. Cunningham's representation of the Coalition took place before its intervention was approved. Since Ms. Winn has carried the main responsibility for the Coalition position, the Court will award fees on behalf of the Coalition solely to Ms. Winn.

## C. *Hours Expended*

In summary, to this point the Court has concluded that in Phases I and II, the Plaintiffs Tasby and the Intervenor NAACP were prevailing parties. In Phase III, the Plaintiffs Tasby, and Intervenors NAACP, Cunningham and Black Coalition are all deemed to have prevailed pursuant to the standards enunciated by the Fifth Circuit. The Court has also made findings of fact as to the reasonable hourly rates for time expended by each attorney who has appeared in this case since 1970 based upon age, experience, qualifications and competence. The inquiry has not ended, however, for the Court must now determine whether the hours expended by each attorney are reasonable in view of the services provided. After a detailed review of the affidavits submitted and the voluminous record of this case, the Court concludes that there has been significant duplication of efforts at particular points in the course of the litigation.

As the Sixth Circuit pointed out in a school desegregation case:

> A factor which the district court did expressly take into account was its view that the services of the NAACP Legal Defense Fund had not been shown to be necessary. As noted above, the use of a number of attorneys frequently results in some duplication of effort, and a district court may take this factor into account by deducting some small percentage of the total hours.

*Northcross v. Board of Education,* 611 F.2d at 637. The Fifth Circuit quoted approvingly from *Northcross* in its fee award opinion, *Tasby v. Estes,* 651 F.2d 287, but added the caveat that

> Obviously, where duplication is found by the court to be not small, the court is not limited to making a small percentage reduction. Parties seeking the assurance that clear representational overkill can provide must bear themselves the cost that it occasions.

651 F.2d 289, n. 1. Duplication, of course, may occur in efforts by several counsel for one party, or overlapping efforts by several parties.

With these standards in mind, the Court now reviews the fee applications to identify any duplication.

### 1. *Plaintiffs Tasby*

In Phase II, the Plaintiffs seek fees for Messrs. Cloutman and Ashton for the Fifth Circuit and Supreme Court appeals, and for Mr. James Nabrit for preparation of the Plaintiffs' brief before the Supreme Court. As noted earlier, the Plaintiffs protested in the Fifth Circuit the 1976 desegregation plan adopted by the district court on the grounds that the high school portions were constitutionally inadequate. At the same time, the NAACP, which had initiated the appeal to the Circuit, was protesting the desegregation plan's provisions regarding K–3 and 9–12 schools, creation of the East Oak Cliff subdistrict and the establishment of several schools at the A. Harris shopping center site. In view of the similarity of positions taken by these parties and the fact that the NAACP attacked the plan on the several grounds which were ultimately adopted by the Circuit, the Court has determined that the time expended by Cloutman during the Fifth Circuit portion should be reduced by 50%. At the same time, although Messrs. Cloutman, Ashton and Nabrit each contributed to the preparation and argument of the Supreme Court brief, the Court finds that there was no duplication in their work. An analysis of the applications for time spent on the preparation of the Supreme Court brief indicates that Cloutman spent 31 hours while Nabrit worked on the brief for 305 hours. It is clear that Mr. Cloutman attempted to minimize any overlap. No reduction will be made for the Supreme Court time by each attorney, there being no duplication.

Other than the duplication of hours identified above for the Fifth Circuit work by Mr. Cloutman, the Court finds that the hours expended by each of Plaintiffs' attorneys in Phases II and III were reasonable and necessary in view of the results obtained. The Court has summarized below the hours which will be subject to the hourly

rates set earlier in this Opinion and to the deduction for duplication in Phase II:

| ATTORNEY | PHASE | HOURS | LESS DEDUCTION | = TOTAL HOURS | × RATE | = AWARD |
|---|---|---|---|---|---|---|
| Cloutman | II (5th Cir.) | 75.3 | − 50% | 37.65 | $100 | $ 3,765.00 * |
| | II (S.Ct.) | 224.0 | − 0% | 224.0 | $100 | $22,400.00 * |
| | III (2/6/80– 1/31/81) | 216.5 | 0% | 216.5 | $100 | $21,650.00 * |
| | (2/3/81– 12/9/81) | 411.5 | 0% | 411.5 | $150 | $61,725.00 * |
| | (1/4/82– 4/26/82) | 45.75 | 0% | 45.75 | $175 | $ 8,006.00 |
| | (4/30/82– 7/23/82) | 18.0 | 0% | 18.0 | $175 | $ 3,150.00 |
| Ralston | III | 15.0 | 0% | 15.0 | $160 | $ 2,400.00 |
| Ashton | II | 65.0 | 0% | 65.0 | $ 80 | $ 5,200.00 |
| Nabrit | II | 313.5 | 0% | 313.5 | $160 | $50,160.00 |
| Legal Assistant | III | 8.2 | 0% | 8.2 | $ 35 | $ 287.00 |
| | | 25.5 | 0% | 25.5 | $ 50 | $ 1,275.00 |

* Subject to enhancement. *See infra.*

## 2. *Intervenor NAACP*

The Intervenor NAACP's applications for all three Phases request fees for the time expended by four attorneys during Phase II and three attorneys and a legal assistant during Phase III. The Court finds that significant duplication has occurred and that the total hours expended on behalf of the NAACP should be reduced accordingly.

In Phase I, attorney Cunningham on behalf of the NAACP seeks fees for the period from July 1975 until entry of the district court judgment in March 1976. The Plaintiffs had been prosecuting the case since 1970, had handled the major portion of the effort to the date of the NAACP intervention, and continued to do a significant part thereafter. The Plaintiffs had been successful in obtaining a finding of liability against the DISD and the litigation was at the remedy phase when Mr. Cunningham commenced his efforts for the NAACP. The Court believes, therefore, that the hours expended by Mr. Cunningham in Phase I should be reduced by 50%.

In Phase II, the NAACP initiated the Fifth Circuit appeal and resisted the grant of certiorari before the Supreme Court. Mr. Cunningham's activities represent the major portion of the NAACP's request during this period of time. Significant hours are also reported by Lucas, Berry and Cald-well, however, for assistance on the NAACP Supreme Court brief. Since the NAACP's efforts at the Fifth Circuit were supported by the Plaintiffs on the high school issue, the Court believes that Mr. Cunningham's hours before the Circuit should be reduced by 30 percent. Since Mr. Cunningham's affidavits indicate that the major portion of the Supreme Court brief and argument represented his efforts, the Court finds that the hours spent by NAACP attorneys Lucas, Berry and Caldwell should be reduced by 50 percent for duplication of efforts on the Supreme Court brief.

The determination of whether duplication took place during Phase III is somewhat easier because this Judge has had active supervision of the case for most of this phase. The Court finds that Plaintiffs Tasby and their counsel, Mr. Cloutman, presented most of the positions advocated by the NAACP. During the two sets of hearings in 1981 on liability (April–May) and remedy (December), Mr. Cloutman took the lead in matters such as desegregation plans, pretrial orders, exhibits and presentation of witnesses. The NAACP, although ably represented by Mr. Haywood, did not take a role in these hearings which added significantly to the Plaintiffs' contributions. Plaintiffs and NAACP submitted a joint desegregation plan, and the Plaintiffs' role

in advocating that plan was important to the final acceptance of certain of its portions by this Court. Consequently, the Court finds that the hours expended by Mr. Haywood should be reduced by 80 percent to reflect the overlap of efforts. The Court has not been able to discern much contribution by any involvement of Mr. Atkins or other members of the NAACP national staff. Mr. Haywood handled the NAACP case during all the hearings; Mr. Atkins attempted to appear only on the last day of a four-week proceeding. Other than that one occasion the Court has no tangible evidence of any contribution by Mr. Atkins. However, in view of the role he may have played in providing experienced direction to Mr. Haywood during Phase III, the Court will allow 10 percent of the hours which Mr. Atkins reports. Also, the hours requested by attorney Demchak and legal assistant Hubbard will be reduced by 80% in view of the almost total duplication of the NAACP efforts during Phase III with those of the Plaintiffs. With the deduction of hours for duplication, the Court finds that the hours expended by attorneys on behalf of the NAACP were reasonable and necessary to the conduct of this litigation. The chart below summarizes the fee award to the NAACP:

| ATTORNEY | PHASE | HOURS | LESS DEDUCTION | = TOTAL HOURS | × RATE | = AWARD |
|---|---|---|---|---|---|---|
| Cunningham | I | 444 | − 50% | 222.0 | $ 60 | $ 13,320. |
| | II (5th Cir.) | 686.1 | − 30% | 480.3 | $100 | $ 48,030.* |
| | (S.Ct.) | 173.7 | − 0% | 173.7 | $100 | $ 17,370.* |
| | III | 23.6 | − 0% | 23.6 | $100 | $ 2,360. |
| Lucas | II | 50 | − 50% | 25.0 | $150 | $ 3,750. |
| Berry | II | 21.5 | − 50% | 10.75 | $150 | $ 1,613. |
| | III | 37.5 | − 50% | 18.75 | $150 | $ 2,813. |
| Caldwell | II | 20 | − 50% | 10.0 | $ 90 | $ 900. |
| Atkins | III | 292.95 | − 90% | 29.29 | $150 | $ 4,394. |
| Haywood | III | 656 | − 80% | 131.2 | $100 | $ 13,120.* |
| Hubbard | III | 286.5 | − 80% | 57.3 | $ 40 | $ 2,292. |
| Demchak | III | 59 | − 80% | 11.8 | $100 | $ 1,180. |

* Subject to enhancement. *See infra.*

## 3. *Cunningham Intervenors*

The preceding discussion concerning the duplication of efforts by the NAACP in Phase III with those of the Plaintiffs applies to the request of Mr. Cunningham for fees on behalf of the Cunningham Intervenors in Phase III. The Plaintiffs carried the major responsibility for the litigation in Phase III. Mr. Cunningham called no witnesses, did not submit a proposed desegregation plan and generally relied upon the Plaintiffs to put forward his position. Accordingly, the Court has decided that Mr. Cunningham's request should be reduced by 80 percent as indicated below:

| ATTORNEY | PHASE | HOURS | LESS DEDUCTION | = TOTAL HOURS | × RATE | = AWARD |
|---|---|---|---|---|---|---|
| Cunningham (to 7/9/81) | III | 319.2 | − 80% | = 63.84 | x $125 | = $ 7,980.* |
| 7/9/81 – 12/9/81 | III | 47.85 | − 80% | = 9.57 | x $125 | = $ 1,196.* |
| 1/4/82 – 7/23/82 | III | 36.3 | − 80% | = 7.26 | x $125 | = $ 908. |

* Subject to enhancement.

## 4. *Black Coalition*

Attorney Joan Winn, as pointed out earlier, was a strong advocate for the compensatory education remedies emphasized by the Court in its final judgment. In addition, Ms. Winn put forward significant testimony as to the attitude of minority parents toward mandatory transportation methods of

desegregation. In large part, however, the efforts of the Black Coalition duplicated those of other parties to this litigation including, in part, those of DISD. Accordingly, the Court has determined that Ms. Winn's hours should be reduced by 60 percent as indicated below:

| ATTORNEY | PHASE | HOURS | LESS DEDUCTION | = TOTAL HOURS | X RATE | = AWARD |
|---|---|---|---|---|---|---|
| Winn | III | 209.25 | − 60% | = 83.7 | x $125 | = $10,463 * |
| Winn | III | 33.5 | − 60% | = 13.4 | x $125 | = $ 1,675 ** |
| Winn | III | 9.5 | − 60% | = 3.8 | x $125 | = $ 475 |

\* Subject to enhancement.

\*\* Reduce by $325 (to $1350) for 2.6 hours attorney fee preparation.

---

D. *Increase in base fees: the multiplier*

As the Court has indicated in discussing the legal standards which govern the identification of "prevailing parties", the Fifth Circuit has held that an award of fees under Section 1988 should be enhanced somewhat due to the contingent nature of such an award. *Schneider v. City of Atlanta,* 628 F.2d at 920; *Knighton v. Watkins,* 616 F.2d at 800–01; *accord Wolf v. Frank,* 555 F.2d 1213, 1218 (5th Cir.1977) (in stockholder's derivative action where fee was contingent on success, hourly fees enhanced by 33%). In addition, an award of fees for litigation which has extended for a lengthy period requires the Court to recognize the hardships such prolonged proceedings have imposed on the counsel involved. The factor of the "undesirability of the case", identified in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, should also be taken into account. The Circuit emphasized in *Johnson:* "Civil rights attorneys face hardships in their communities because of their desire to help the civil rights litigant." 488 F.2d at 719. The Court should include in its award of fees a factor to reflect the economic impact on an attorney's practice of a "decision to help eradicate discrimination". *Id.* The skill, experience and ability which this complex and protracted litigation demanded must also be weighed by the Court.

Measuring by either the *Johnson* factors or the "lodestar" method, *see Copper Liquor Co. v. Adolph Coors,* 624 F.2d at 583, n. 15, the Court is of the opinion that the fees for the lead attorneys for the prevailing parties should be increased by 50% for Phase II, and 30% for hours in Phase III through the end of 1981 (that being the end of the most difficult portion of Phase III).

The chart below shows the effect of increasing the fees of the lead attorneys:

PHASE II (50% increase)

| ATTORNEY | BASIC AWARD | LESS HOURS ON FEE APPLICATION | ENHANCED FEE |
|---|---|---|---|
| Cloutman | $ 26,165 | 0 | $ 39,247.50 |
| Cunningham (NAACP) | $ 65,400 | 1 hr. ($100) | $ 97,950.00 |

PHASE III (30% increase)

| ATTORNEY | BASIC AWARD | LESS HOURS ON FEE APPLICATION | ENHANCED FEE |
|---|---|---|---|
| Cloutman | $ 83,375 | 6.5 hrs. ($975) | $107,120.00 |
| Cunningham Intervenors | $ 7,980 | 7 hrs. ($872.50) | $ 9,240.00 |
| | $ 1,196 | 0 | 1,555.00 |
| Haywood (NAACP) | $ 13,100 | 0 | $ 17,030.00 |
| Winn | $ 10,463 | 0 | $ 13,602.00 |

*Reimbursement of Expenses*

There is, finally, the matter of reimbursement of necessary expenses incurred by the prevailing parties. The requests for expenses are summarized earlier in this opinion. "The authority granted in Section 1988 to award 'a reasonable attorney's fee' [includes] the authority to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Northcross v. Board of Education,* 611 F.2d at 639. Reasonable photocopying, paralegal expenses and travel and telephone costs are thus recoverable under Section 1988. *Miller v. Carson,* 628 F.2d at 349. In *Jones v. Diamond,* 636 F.2d at 1382, the Fifth Circuit indicated that courts may award fees for experts where "their testimony and assistance were helpful in representing clients in civil rights litigation."

The Court has examined the underlying documents for the expense requests and finds that the expenses of Plaintiffs, Intervenor Black Coalition and NAACP attorney Ernest Haywood are reasonable, necessary, and adequately supported and should be allowed in full.

Mr. Cunningham requests reimbursement of expenses in the sum of $9493.50 for the period during which he was representing the NAACP. The Court is unable to allow the travel portion ($4743.50) of Mr. Cunningham's request, being of the opinion that neither the supporting documentation or Mr. Cunningham's testimony sufficiently establishes the necessity of such expenses in connection with this case. The remaining portion of Mr. Cunningham's expenses ($4750.00) is adequately supported, reasonable and will be allowed.

The Court is perplexed and dissatisfied with the NAACP's expense request for Mr. Atkins, et al., in the amount of $42,200.88. The underlying documentation, provided only after much delay, is insufficient and, as to some items, even if sufficient, not allowable, *e.g.* office supplies, etc. ($2972.12) and office space ($1,950.00). The amounts sought for attorneys ($2902.47) and research ($1794.19) are, presumably, included within the request for attorneys fees previously discussed in this opinion, or should have been so included; in any event, these amounts will be disallowed. The Court is unaware of any necessity for the NAACP spending $15,722.01 for court reporters and can conceive of no justification for the expense; daily copy was not necessary; the entire sum is disallowed. The necessity for travel expenses in the amount of $9700.94 is insufficiently documented and not explained; it will be reduced by 80% to $1840.00, the Court recognizing that some travel was necessary. The same holds true of the NAACP request for hotel ($2072.63) and telephone ($1035.03), which will similarly be reduced 80% to $621.53. The requests for fees for expert witnesses ($2661.95) and consultants ($1389.54), in the total amount of $4051.49 are also inadequately justified; even so, the Court recognizes that such expenses may have been necessary in part and will allow 50% thereof, $2,026.00.

The Court's expense award then is summarized as follows:

| | | | |
|---|---|---|---|
| 1. | Plaintiffs | | $ 20,473. |
| 2. | Black Coalition | | $ 367. |
| 3. | NAACP | | |
| | Haywood | $ 227.40 | |
| | Cunningham | $ 4,750.00 | |
| 4. | NAACP | | |
| | Atkins, et al. | $ 4,487.53 | |
| | | | $ 9,465. |
| TOTAL EXPENSE REIMBURSEMENT | | | $ 30,305. |

The total award will therefore be as set forth below:

### Plaintiffs

| | | |
|---|---:|---:|
| Cloutman | $ 39,248. | |
| | 107,120. | |
| | 8,006. | |
| | 3,150. | |
| | $157,524. | |
| Ralston | $ 2,400. | |
| Ashton | $ 5,200. | |
| Nabrit | $ 50,160. | |
| Legal Assistant | $ 1,562. | |
| | | $216,846. |

### NAACP

| | | |
|---|---:|---:|
| Cunningham | $ 13,320. | |
| | 97,950. | |
| | 2,360. | |
| | $113,630. | |
| Lucas | $ 3,750. | |
| Berry | $ 4,426. | |
| Caldwell | $ 900. | |
| Atkins | $ 4,394. | |
| Haywood | $ 17,030. | |
| Hubbard | $ 2,292. | |
| Demchak | $ 1,180. | |
| | | $147,602. |

### Black Coalition

| | | |
|---|---:|---:|
| Winn | $ 13,602. | |
| | 1,350. | |
| | 475. | |
| | | $ 15,427. |

### Cunningham Intervenors

| | | |
|---|---:|---:|
| Cunningham | $ 9,240. | |
| | 1,555. | |
| | 908. | $ 11,703. |

| | |
|---|---:|
| TOTAL FEES | $391,578. |
| TOTAL EXPENSES | $ 30,305. |
| TOTAL AWARD | $421,883. |

*Conclusion*

Some, not familiar with the complexities of this litigation, may consider these fee awards high; others may consider the awards not sufficient, after seven years of hard fought legal battles; the Court is satisfied that the awards are fair and reasonable and consistent with established legal and equitable principles.

In its Memorandum Opinion and Order dated August 4, 1982, the Court directed Plaintiffs' and Intervenors' counsel to sup-

plement their time sheets through July 23, 1982, and requested all counsel to review the Opinion and point out to the Court any apparent arithmetical errors in the Court's computations regarding attorneys' fees and expenses. The Court reviewed the information and suggestions filed by counsel in accordance with its request and on August 19, 1982, entered its Order with respect thereto. This Amended Memorandum Opinion and Order incorporates the rulings in the August 19 Order.

Finally, the Court expresses again a hope that it has expressed on previous occasions, *see, e.g.,* Court's Order December 21, 1981, that this seemingly endless legal struggle which actually began in 1955, *see Bell v. Rippy,* 133 F.Supp. 811 (N.D.Tex.1955), can soon be brought to an end.

SO ORDERED.

